IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
UNITED STATES OF AMERICA      )
                              )
         v.                   )  Criminal No. 05-24 Erie
                              )
BARRY WAYNE LEWIS             )
```

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

AND NOW comes the United States of America, by its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christine A. Sanner, Assistant United States Attorney for said District, and hereby submits the following response to the defendant's motion to suppress evidence and statements:

I. Procedural and Factual Overview

1. On May 17, 2005, a federal grand jury in the Western District of Pennsylvania returned a one-count Indictment charging the defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

2. The instant prosecution is the result of the defendant's arrest on March 28, 2005, by the Warren Police.

3. On March 28, 2005, Warren Police Deputy Sheriff Keith R. Sorensen was on duty in his patrol vehicle. At approximately 10:05 p.m., Deputy Sorensen observed two men on the corner of Hickory Street and Fourth Avenue. One of the men

appeared to be carrying a rifle that had been wrapped in a blanket and placed inside a garbage bag.

4. Deputy Sorensen watched as the two men crossed the street in front of his police car. As they did so, it appeared that the defendant, who carried the rifle, tried to hide it from the officer's vision. Using the man he was walking with as a shield, the defendant endeavored to block Deputy Sorensen's view of the weapon.

5. Continuing through the intersection, Deputy Sorensen radioed the Warren City Police, requesting assistance and advising that he had observed two men, one of whom appeared to be carrying, and attempting to conceal, a rifle.

6. After circling the block, Deputy Sorensen again located the two men, stopped his cruiser near an intersection, activated his lights, and got out of his car. Deputy Sorensen then approached the two men. He asked the defendant what he was carrying. The defendant stated that he was holding a rifle that he had found in the garbage down the street, and he proceeded to hand the rifle over to the officer.

7. The man who had been walking with the defendant, who identified himself as the defendant's nephew, stated that he did not know that the defendant even had the weapon.

8. Warren City Police Officer Brian Gulnac arrived, and Deputy Sorensen turned the rifle over to him. Officer Gulnac

cleared the rifle, which was not loaded, and asked dispatch to run the serial number on the weapon to determine whether it had been stolen. Officer Gulnac secured the rifle in the front seat of his patrol vehicle.

       9.    The defendant stated that he found the rifle leaning against a tree. He also told the officers his name, adding that he did not have any identification, because it had been stolen. He stated that he had never been in any kind of trouble before, and asked whether he could keep the weapon until someone claimed it.

       10.    Officer Gulnac advised Deputy Sorensen that a pat down should be performed on both men to check for any other weapons. The defendant and the man who identified himself as the defendant's nephew both agreed to be frisked.

       11.    Officer Gulnac then ran a warrant check and discovered that the defendant was wanted in California and should be considered armed, dangerous, and mentally disturbed. Upon learning of the extraditable warrant for the defendant, the officers placed the defendant in handcuffs and arrested him.

       12.    The defendant was then transported to the Warren Police Station. At approximately 11:00 p.m., the defendant was interviewed by ATF Special Agent David Farabaugh. Agent Farabaugh advised the defendant of his constitutional rights under <u>Miranda</u>, which the defendant elected to waive, both orally and in writing. The defendant told Agent Farabaugh that he had recently been

released from a state prison in California for assault with a deadly weapon, and that he had returned to Pennsylvania because his father passed away and his mother suffers from advanced diabetes. The defendant told Agent Farabaugh that he found the rifle when he was picking through garbage, and that it was lying in someone's yard. He added that he intended to take the rifle to his sister's house, and that he had planned to ask her to call the police.

13. The defendant did not have a permit to carry a firearm.

14. A criminal history check of the defendant reveals: that he was convictee on or about July 2, 1982, at Docket Number CR169043 in the Court of Common Pleas, County of Cuyahoga, Criminal Division, State of Ohio, of the crime of abduction; that he was convicted on or about March 14, 1991, at Docket Number CR255224 in the Court of Common Pleas, County of Cuyahoga, State of Ohio, of the crime of burglary; and that he was convicted on or about August 7, 1995, in the Superior Court, County of San Diego, Criminal Division, State of California, of the crime of assault with a deadly weapon. All of these prior convictions are crimes punishable by imprisonment for a term exceeding one year.

II. Response to Defendant's Motion to Suppress Evidence and Statements.

The defendant filed a motion to suppress the weapon and his statements, alleging that he was seized in violation of the Fourth Amendment of the United States Constitution. The defendant

further contends that, as a result of the alleged unlawful seizure, the evidence and his statements were obtained unlawfully.

     A.   The Encounter was Consensual: No Seizure Occurred.

     1.   The Fourth Amendment prohibits "unreasonable searches and seizures."  Const., amend IV.[1]

     2.   "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."  United States v. Mendenhall, 446 U.S. 544, 553 (1980).

     3.   A "seizure" does not occur simply because an officer approaches an individual and asks a few questions.  United States v. Bostick, 501 U.S. 429, 434 (1991).  As the Supreme Court has noted, "[t]he Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation."  Bostick, 501 U.S. at 439.

     4.   It is settled law that police officers may approach individuals in public places and ask them questions, and a consensual encounter does not trigger Fourth Amendment scrutiny.  Bostick, 501 U.S. at 439 (citing Terry v. Ohio, 392 U.S. 1, 19 n.16

---

[1] Reasonableness depends on a balance between the public interest and the individual's right to be free from arbitrary interference by law enforcement.  Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (per curiam) (citations omitted).  No bright-line rules are employed when assessing reasonableness, which is "measured in objective terms by examining the totality of the circumstances."  See Ohio v. Robinette, 519 U.S. 33, 39 (1996).

5

(1968) ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons.")).

5. Consensual encounters are important tools of law enforcement and need not be based on any suspicion of wrongdoing. Florida v. Bostick, 501 U.S. 429, 434 (1991); see also Florida v. Royer, 460 U.S. 491, 497 (1983) (police officers may approach individuals without reasonable suspicion or probable cause, and may question such individuals without implicating the Fourth Amendment). Even when officers have no basis to suspect a particular individual, they may nonetheless approach him, ask him questions, ask to examine his identification, and request consent to search items that he may be carrying. See Bostick, 501 U.S. at 434-35 (citing Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984); INS v. Delgado, 466 U.S. 210, 216 (1984); Florida v. Royer, 460 U.S. 491, 501 (1983)).

6. No seizure has occurred if a reasonable person would feel free to disregard the police and go about his business, or ultimately whether a reasonable person would feel "free to decline the officer's requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439; United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994). In sum, mere police questioning does not constitute a seizure, and an encounter does not trigger Fourth Amendment scrutiny unless it loses its consensual nature. Bostick, 501 U.S. at 434-35.

6

7.   Here, Deputy Sheriff Sorensen observed two men on the corner of Hickory Street and Fourth Avenue, late in the evening.  One of the men, the defendant, appeared to be carrying a rifle that was wrapped in a blanket and which protruded from a garbage bag.  As the defendant crossed the street in front of Deputy Sorensen's police car, he tried block Deputy Sorensen's view of the rifle by using the man he was walking with as a shield.

8.   Observing this, Deputy Sorensen radioed for backup, circled the block, stopped his cruiser and approached the two men.  Deputy Sorensen asked the defendant what he was carrying.  The defendant willingly replied that he was carrying a rifle.  The defendant added that he had found the rifle in the garbage down the street.  Without protest, the defendant handed the rifle over to Deputy Sorensen.

9.   Thus, the defendant willingly engaged in a consensual encounter with Deputy Sorensen.  As noted above, there was, initially, only one officer at the scene, and there is no indication that Deputy Sorensen made any intimidating movement or show of force.  To the contrary, Deputy Sorensen simply approached the defendant on a public street and asked him what he was carrying.  The defendant willingly responded, and asserted that he had just found the rifle, which he proceeded to hand over to the officer.  The encounter was consensual and, examining it under the totality of the circumstances, no seizure occurred.  See United

States v. Williams, 413 U.S. 347, 352 (3d Cir. 2005) (citations omitted).  As the Supreme Court has repeatedly explained, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."  Bostick, 501 U.S. at 435 (citation and internal quotation marks omitted).  Because the encounter was consensual and the Fourth Amendment is not implicated, no evidence was seized in violation of it, and the motion to suppress should be denied.

      B.   Even If the Defendant was "Seized," the Stop was Lawful.

      1.   Should this Court find that the defendant's encounter with the police was not consensual, it must, nevertheless, find that Deputy Sorensen had reasonable suspicion to justify an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968).

      2.   When an encounter is not consensual, an investigative stop is governed under the principles established by Terry v. Ohio, 392 U.S. 1 (1968); Berkemer v. McCarty, 468 U.S. 420, 439 (1984).  Terry found that the Fourth Amendment is implicated and a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." 392 U.S. at 20 n.16.  Terry permits the

police to conduct an investigative stop when there is reasonable suspicion based upon specific and articulable facts "that criminal activity may be afoot." 392 U.S. at 30. To show that he had reasonable suspicion, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.'" <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000) (quoting <u>Terry</u>). A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity. <u>Id</u>.

   3. In determining whether there was "some minimal, objective justification for an investigatory stop," <u>United States v. Givan</u>, 320 F.3d 452, 458 (3d Cir. 2003), "a court must consider the totality of the circumstances, in light of the officer's experience." <u>Id.</u> (<u>citing</u> <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002)); <u>United States v. Sokolow</u>, 490 U.S. 1, 8 (1989) (existence of reasonable suspicion is based upon a totality of the circumstances). Great deference is accorded to the officer's knowledge of the nature and nuances of the type of criminal activity that he, in his experience, has observed. <u>United States v. Nelson</u>, 284 F.3d 472, 482 (3d Cir. 2002).

   4. In <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981), the Supreme Court delineated the following parameters to determine reasonable suspicion:

> Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive

9

>of the myriad factual situations that shall arise. But the essence of all that has been written is that the totality of the circumstances --the whole picture--must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.
>
>The [assessment of the whole picture] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same-- and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

     5.   In this case, at ten o'clock in the evening, Deputy Sorensen observed the defendant, walking down the street with another man while carrying what appeared to be a rifle which had been wrapped in a rug and a bag. Deputy Sorensen watched as the defendant attempted to conceal the rifle and block the officer's view of it, using his companion as a shield. Based upon these specific and articulable facts, Deputy Sorensen had reasonable suspicion that criminal activity might be afoot. Under Terry, an investigative stop was justified. Indeed, based upon his observations and experience as an officer, it would have been poor police work for Deputy Sorensen to have failed to investigate the defendant's behavior further. See Terry, 392 U.S. at 23.

6. Deputy Sorensen asked the defendant what he was carrying, and the defendant stated that it was a rifle, which he then proceeded to hand over to Deputy Sorensen. Thus, even though Terry permits a frisk for weapons in these circumstances, Deputy Sorensen had no need to do so, as the defendant willingly handed the rifle over to the officer.

7. The defendant's reliance on United States v. Ubiles, 224 F.3d 213 (3d Cir. 2000), in support of his motion to suppress the rifle is entirely misplaced. In Ubiles, the officers could not tell whether Ubiles carried a weapon or not, but, based on an uncorroborated anonymous tip, they conducted a pat-down search that produced a machete and a loaded gun. Id. at 215.

8. In contrast, Detective Sorensen personally observed the defendant carrying -- and actively trying to conceal -- what appeared to be a rifle. Moreover, Detective Sorensen had no need to pat-down the defendant to obtain the rifle, as the defendant willingly handed the rifle over to him.

9. Likewise, mere the fact that Pennsylvania law permits some individuals to carry rifles (a fact that is wholly irrelevant to the determination of whether the encounter was consensual, discussed supra) does not weigh in the defendant's favor. Cf. United States v. Valentine, 232 F.3d 350, 356 (3d Cir. 2000) ("officers are allowed to ask questions of anyone -- and gun owners are no exception"). And courts have repeatedly found that

11

an officer's reasonable suspicion of criminal activity may be formed by observing exclusively legal activity. See, e.g., Illinois v. Wardlow, 528 U.S. 119 (2000) (quoting Terry).

10. Here, at ten o'clock on one March evening, Deputy Sorensen observed the defendant walking down a city street carrying a concealed rifle which he was endeavoring to shield from the officer's view. Based upon these specific and articulable facts, Deputy Sorensen had ample reasonable suspicion that criminal activity might be afoot.

11. Because there was no violation of the Fourth Amendment, the rifle was obtained lawfully, and the motion to suppress it should be denied.

    C.    Because there was No Fourth Amendment Violation, the Defendant's Statements Were Not "Tainted".

1. The defendant's contention that his voluntary statements, made to the officers at the scene, must be excluded as "fruit of the poisonous tree" assumes the existence of a constitutional violation. See Oregon v. Elstad, 470 U.S. 298, 305 (1985). This figure of speech is drawn from Wong Sun v. United States, 371 U.S. 471 (1963), in which the Court held that evidence and witnesses discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence. The Wong Sun doctrine applies as well when the fruit of the Fourth Amendment violation is a confession. Oregon v. Elstad, 470 U.S. at 305.

2.  However, for all of the reasons set forth above, there was no Fourth Amendment violation in this case. Because there was no Fourth Amendment violation, the defendant's motion to suppress his statements should be denied.

D.  Pursuant to the Fifth Amendment, The Defendant's Statements Were Voluntary.

1.  The Due Process clauses of the Fifth and Fourteenth Amendments bar the use of an incriminating statement that is involuntary. LaFave et al. 2 Criminal Procedure § 6.2(b), p.444 (2d ed. West 1999).

2.  "The ultimate issue of voluntariness is a legal question requiring an independent federal determination." Miller v. Fenton, 474 U.S. 104, 110 (1985).

3.  The Supreme Court has made it clear that a defendant's statement is involuntary when his "will was overborne in such a way as to render his confession the product of coercion." Arizona v. Fulminante, 499 U.S. 279, 288 (1991).

4.  In determining whether a statement is voluntary, precedent requires the consideration of the "totality of all the surrounding circumstances, both the characteristics of the accused and the details of the interrogation." Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

5.  These surrounding circumstances include not only the element of police coercion, Colorado v. Connelly, 479 U.S.

157, 167 (1986), but may also include "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." Withrow v. Williams, 507 U.S. 680, 693 (1993).

   6. Based upon the facts set forth above, Deputy Sorensen simply approached the defendant, who was walking down the street, and asked him what he was carrying. The defendant was neither in custody, nor was he being interrogated, when he told Deputy Sorensen that he was carrying a rifle. Because, as set forth above, there was no Fourth Amendment violation to "taint" the defendant's statements, and because the defendant's statements were made voluntarily, his motion to suppress them should be denied.

   E. The Defendant's Later Statements were Lawfully Obtained After his Arrest.

   1. The defendant was arrested when the officers learned of the outstanding California warrant for his arrest. Following his arrest, the defendant was transported to the Warren Police Station, where he was interviewed by ATF Special Agent David Farabaugh.

   2. Because the defendant was in custody at this point, the obligation to administer warnings pursuant to Miranda attached. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Stansbury v. California, 511 U.S. 318, 322 (1994).

   3. Accordingly, Agent Farabaugh advised the defendant of his constitutional rights under Miranda. The

14

defendant waived these rights, both orally and in writing. The defendant told Agent Farabaugh that he had recently been released from a state prison in California for assault with a deadly weapon, and that he had found the rifle when he was picking through garbage. These statements were lawfully obtained: as discussed above, they were not "tainted" by any Fourth Amendment violation. Because there was no Fourth Amendment violation to "taint" the defendant's statements to Agent Farabaugh, see Oregon v. Elstad, 470 U.S. at 306, and because the statements were voluntary for purposes of the Fifth Amendment, the defendant's motion to suppress them should be denied.

    WHEREFORE, based upon all of the foregoing information, the defendant's motion to suppress the evidence and his statements must be denied.

                              Respectfully submitted,

                              MARY BETH BUCHANAN
                              United States Attorney


                              s/Christine A. Sanner
                              CHRISTINE A. SANNER
                              Assistant U.S. Attorney
                              PA ID No. 85039

Dated: September 30, 2005