IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       )
                               )
          v.                   )       Criminal No. 05-24 Erie
                               )
BARRY WAYNE LEWIS              )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**INDICTMENT WITH PREJUDICE FOR SPEEDY TRIAL ACT VIOLATIONS**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christine A. Sanner, Assistant United States Attorney for said district, and states:

I.    **INTRODUCTION**

In his motion to dismiss the indictment, the defendant, Barry Wayne Lewis, alleges that the government has failed to bring him to trial within the seventy-day limit of the Speedy Trial Act ("STA" or the "Act"). Lewis asserts that the time associated with his competency evaluation and hospitalizations should <u>not</u> be excluded from the seventy-day calculation under the STA. Specifically, he argues that any time, beyond ten days, that it took to transport him to and from various evaluation and treatment facilities should not be excluded under the Act.

The defendant has misconstrued the provisions of the STA. In fact, as demonstrated below, the government has complied with the STA and the seventy-day period has not, as yet, expired.

The delay of which the defendant complains in this case

resulted from proceedings to determine his mental competency to stand trial as well as from the period during which this Court found the defendant to be incompetent to stand trial. It was ultimately determined that the defendant had been malingering, and this Court found that he was, indeed, competent to stand trial.

Based on the defendant's initial motion to determine his competency, the Court, by Order dated January 19, 2006, required the defendant to undergo a competency evaluation. Pursuant to 18 U.S.C. § 3161(h)(1)(A), as well as pursuant to § 3161(h)(1)(F), all of the time that this Court took to determine the defendant's competency, from January 19, 2006 until January 29, 2007, the date on which this Court found that the defendant was competent to stand trial, is excluded from the running of the speedy trial clock. 18 U.S.C. § 3161(h)(1)(A); 18 U.S.C. § 3161(h)(1)(F); United States v. Vasquez, 918 F.2d 329 (2d Cir. 1990); United States v. Tewid, 86 Fed. Appx. 224 (9th Cir. 2003); United States v. Yazzie, 2006 WL 2772636 (D. Ariz. Sept. 25, 2006); United States v. Triumph, 2004 WL 1920352 (D. Conn. Aug. 24, 2004). Pursuant to these cases, sections 3161(h)(1)(A) and 3161(h)(1)(F) both independently stand for the proposition that the entire time period from the time that the defendant was ordered to undergo psychiatric examination until the time that this Court ruled that the defendant was competent to stand trial is excludable for speedy trial purposes.

However, should this Court accommodate the defendant's

2

urging, and construe Section 3161(h)(1)(H) so as to set forth a requirement that the U.S. Marshals Service was to have transported the defendant to a place of examination within ten days, even then the seventy day period under the STA has not yet expired. United States v. Noone, 913 F.2d 20 (1st Cir. 1990). At most, the speedy trial clock ran in this case for a total of 62 days until the defendant arrived at the Metro Correctional Center, the facility to which he was transported for his psychiatric evaluation, on March 28, 2006. See United States v. Noone, 913 F.2d 20 (1st Cir. 1990). This is because, as even the case law cited by the defendant recognizes, the time during which a defendant is evaluated, as well as the time during which a psychiatric report is delivered to the Court, and the time during which the Court considers the report and schedules and conducts a competency hearing, is all excludable. Id. at 27 (citation omitted) (rejecting defendant's argument that time transporting him from place of psychiatric evaluation back to Court was not excludable). And, after the Court found the defendant to be incompetent during the first competency hearing on May 26, 2006, all time thereafter, until January 29, 2007, is excludable under the STA, section 3161(h)(4). United States v. Degideo, 2004 WL 1240669 (E.D. PA 2004). Thus, even pursuant to the case law that the defendant cites, only 62 non-excludable days have passed in the instant case, and there has been, as yet, no Speedy Trial Act violation.

For the sake of argument, however, should this Court find that a STA violation has occurred and should it grant the defendant's motion to dismiss, then, for the reasons set forth below, the dismissal should be without prejudice.

## II.  TIMELINE AND PROCEDURAL BACKGROUND

For the Court's convenience, an appendix setting forth the applicable dates in this case is set forth at Appendix A.

In summary, the defendant was indicted and charged with one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), on May 17, 2005.

On May 27, 2005, the defendant was arraigned, and, he agrees with the government that, after this date, the speedy trial clock began to run.  The defendant filed his first motion to extend time for filing pretrial motions on June 6, 2005.  He agrees with the government that, by June 6, 2005, nine days had run on the speedy trial clock.

The defendant also agrees that the time from June 6, 2005 through January 23, 2006, is excluded from the speedy trial computation due to various pretrial motions filed by the defendant, court orders excluding time, and pursuant to 18 U.S.C. § 3161(h)(1)(F).[1]  Thus, the parties both agree that, as of January

---

[1]  The time from June 6, 2005 through January 23, 2006 is excludable from the seventy-day period because of the defendant's filing of motions to extend the time for filing pretrial motions, including the filing of a pretrial motion to suppress, and the filing of a motion to continue trial until the January 23, 2006

23, 2006, only nine days had run on the speedy trial clock.

On January 19, 2006, the day before he was scheduled to plead guilty, the defendant filed a Motion for Competency Determination. This Court granted the motion that same day.

At this point, some degree of confusion sets in, because, although the Court's January 19, 2006 Order was electronically filed, a certified, raised seal copy of the Order was not provided to the Marshals Service. In this case, the Marshals Service did not receive a copy of the Order until February 23, 2006.

After the Marshals Service in Erie received a certified copy of the Order on February 23, 2006, the Order was then sent to the Marshals Service in Pittsburgh. And, on March 3, 2006, the certified, raised seal copy of the Order was sent from the Pittsburgh Marshals Service to the Bureau of Prisons (BOP) to request a designation for Lewis to a facility. On March 16, 2006, this Court issued an Order directing the Marshals Service to confer with the BOP to determine the location of the competency evaluation and immediately transport Lewis to that location. The following day, March 17, 2006, the BOP designated Lewis to the Metro Correctional Center in New York. On March 20, 2006, the Marshals Service Justice Prisoner and Alien Transportation System ("JPATS")

---

trial term. (Def. Motn., ¶ 4); see also, 18 U.S.C. § 3161(h)(1)(F) (excluding delays resulting from any pretrial motion from the date of the filing of the motion through the disposition of such motion).

received a movement request from the Pittsburgh Marshals Office for Lewis, and, on March 21, 2006, JPATS airlifted Lewis from Pittsburgh to Oklahoma. On March 28, 2006, JPATS airlifted Lewis from Oklahoma to New York and he arrived at the Metro Correctional Center.

From March 28, 2006, until April 27, 2006, Lewis' competency was evaluated at the Metro Correctional Center. On May 11, 2006, Dr. Ryan completed a Competency Evaluation Report.

On May 26, 2006, this Court held a competency hearing and found Lewis mentally incompetent to stand trial. This Court then committed the defendant to the custody of the Attorney General for treatment.

On June 8, 2006, Lewis was designated to a treatment facility in Springfield, Missouri. On June 20, 2006, JPATS airlifted Lewis from Pittsburgh to Oklahoma, and, on June 22, 2006, Lewis was transported via bus from Oklahoma to the treatment facility in Missouri.

On November 6, 2006, Dr. Lea Ann Preston completed a competency report for Lewis. On November 15, 2006, Warden J.E. Gunga issued a Certificate of Competency, and this Court was notified of Lewis' competency by a letter dated November 17, 2006, which was received on November 21, 2006.[2]

---

[2] On November 28, 2006, JPATS received a movement request for Lewis from the Erie Marshals Service. Lewis was transported via bus from Missouri to Oklahoma on December 6, 2006, and was

This Court set a hearing date, to determine Lewis' competency, to be held on January 29, 2007.  The defendant did not object to the date of the hearing.

However, on January 26, 2007, Lewis filed a motion to dismiss the indictment alleging STA violations.

On January 29, 2007, this Court held its second hearing to determine Lewis' competency, and found the defendant competent to stand trial.  The instant briefing on the defendant's motion to dismiss followed.[3]

## III.  ARGUMENT

A.  **The Entire Time Period Between a Defendant's Initial Request for a Mental Competency Examination and the Court's Final Determination of the Defendant's Competency Is Excludable under the STA.**

This Court should deny the defendant's motion to dismiss the indictment under the STA: the excludable delay in this case consisted of two competency examinations, as well as two competency hearings, and pretrial motions.  Throughout the pendency of this case, there has been an outstanding motion as to the defendant's competency that remained open until this Court determined, on January 29, 2007, that Lewis was competent to stand trial.  This is

---

airlifted from Oklahoma to Pittsburgh on December 12, 2006.  Lewis arrived at the Erie County Prison on December 20, 2006.

[3] The time from January 26, 2007, the date that Lewis filed the instant motion to dismiss the indictment, is excludable pursuant to 18 U.S.C. § 3161(h)(1)(F), until the Court disposes of the instant motion.

so because, as discussed below, under the STA, pretrial delays attributable to the mental incompetency of a defendant, and pending motions thereon, are automatically excluded under 18 U.S.C. § 3161(h)(1)(A), delay resulting from any proceeding, including examinations, to determine the mental competency or physical capacity of the defendant; 18 U.S.C. § 3161(h)(1)(F), delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; and 18 U.S.C. § 3161(h)(4), delay resulting from the fact that defendant is mentally incompetent or physically unable to stand trial.

### 1. Nine Days Ran During the Period Between May 27, 2005 and January 23, 2006.

The STA provides that the trial of a defendant charged in an indictment, who has pled not guilty, shall commence within seventy days of the latter of either the filing and making public of an indictment, or the date the defendant has appeared before the court. 18 U.S.C. § 3161(c)(1). In the present case, the parties agree that the seventy-day period began on May 27, 2005, the date Lewis first appeared before the court for his arraignment.

In computing the 70 days, certain periods of time are excluded. Section 3161(h) lists nine categories of delay that are excluded from computations under the 70-day rule, which serve to toll the STA clock. The excludability of the delays set out in 18 U.S.C. §3161(h)(1)-(6) is "automatic," whether or not the court has

8

included them in an order.  Henderson v. United States, 476 U.S. 321, 327 (1981); see e.g., United States v. Noone, 913 F.2d 20, 24 n.4 (1st Cir. 1990) (citations omitted).

       As set forth above, in this case, the parties agree that: the time from June 6, 2005, through January 23, 2006, is excluded; and that, as of January 23, 2006, only nine days had run on the speedy trial clock.  18 U.S.C. § 3161(h)(1)(F).

   **2.   The Period Between January 23, 2006 to January 29, 2007, Was Excludable in its Entirety.**

       In this case, the period between the defendant's filing of his motion to determine his competency, and this Court's conclusion, on January 29, 2007, that the defendant was competent to stand trial, is excludable.   The time period is properly excluded under the STA, 18 U.S.C. §§ 3161(h)(1)(A), (F), and (h)(4).

   **a.   18 U.S.C. § 3161(h)(1)(A)**

       Section 3161(h)(1)(A) provides for the exclusion of "[a]ny period of delay" including "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant."  18 U.S.C. § 3161(h)(1)(A).  The defendant seeks to limit the period of time included in subsection A, however, by reading into it the limiting language of § 3161(h)(1)(H), while acknowledging that there is little case law to support his position.

       Arguing   that   there   were   impermissible   delays   in

9

transporting him to the facilities for his competency evaluations and treatment, Lewis believes that, pursuant to subsection (h)(1)(H), a large portion of time between January 19, 2006 and January 29, 2007 is not excludable. In relevant part, subsection (h)(1)(H) excludes the period of "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date . . . [of] an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(H).

Courts, however, have rejected the defendant's position. For example, in United States v. Vasquez, 918 F.2d 329 (2d Cir. 1990), the trial court issued an order for a psychiatric evaluation of the defendant. The Marshals Service never received the order. Four months had passed before the government learned that the Marshals had not received the court's order, and another five months passed before the defendant reached the evaluation facility. Vasquez, 918 F.2d at 331. In all, approximately nine months passed between the court's September 30, 1987 order directing a psychiatric examination of Vasquez and Vasquez's arrival at the examination facility on June 18, 1988. Id.

When considering Vasquez's STA claims, the court noted the provisions of subsection (h)(1)(H), but nevertheless found that "even if we assume that administrative mistakes in this case led to

an 'unreasonable' delay, that delay would not necessarily have constituted a violation of [the defendant's] rights under the Speedy Trial Act." Id. at 333.  The court went on to find that because the delays in Vasquez's case "arose from proceedings to determine [the defendant's] competency and were prior to the conclusion of the hearing thereon, they must be excluded from the calculation of the speedy trial clock whether or not they are reasonable." Id. at 332-33 (finding time excludable under both subsections (h)(1)(A) and (h)(1)(F), and finding that (h)(1)(H) did not limit the excludable time).[4]

Other courts have reached the same conclusion.  In United States v. Yazzie, 2006 WL 2772636 (D. Ariz., Sept. 25, 2006), the court held that (h)(1)(A) controls, not (h)(1)(H), and that section 3161(h)(1)(A) "contains no language limiting excludable delays to

---

[4] The Judicial Conference has noted the interplay between subsections A and H and has given some guidance when such interplay occurs.  Notably, the Comment to subsection A, states that excludable time *may* be reduced by an unreasonable delay in transportation, and not that it *shall* be reduced. See Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended, Comment, at 31 (hereinafter STA Guidelines)(referring to 18 U.S.C. § 3161(h)(1)(H)).  This is consistent with the Comment to subsection H providing that delayed transportation time is not automatically non-excludable if the time is encompassed within another exclusion. Moreover, where another exclusion encompasses transportation time, "the transportation time should be presumed reasonable unless an issue is raised by the parties." STA Guidelines, Comment, at 44.  Therefore, transportation time in excess of 10 days is neither automatically presumed unreasonable nor is it automatically non-excludable as Lewis suggests.

'reasonable' periods." Id. at *4-*5. The court in Yazzie excluded
111 days that elapsed between the court's June 17, 2005 order
directing that the defendant be transported for a competency
evaluation and the defendant's arrival at the facility on October
6, 2005. Id. at *1. The court found that the entire delay was
excludable under (h)(1)(A). See also United States v. Tewid, 86
Fed.Appx. 224 (9th Cir. 2003) (declining to apply time limitations
found in subsection (h)(1)(H) where time was excluded to determine
defendant's competency).

Again, in United States v. Triumph, 2004 WL 1920352, at
*2-*3 (D. Conn. Aug. 24, 2004), the court found that the fifty days
that had elapsed between the court-ordered evaluation and the
defendant's arrival at the medical center were excludable pursuant
to § 3161(h)(1)(A) and (h)(1)(F), notwithstanding the provisions of
subsection (h)(1)(H).[5] Accord, STA Guidelines, at 30 (stating that
proceedings related to competency may be viewed as a type of

---

[5] It is also clear that the defendant moved for, and that the
applicable statutes envision, both an examination and a hearing.
18 U.S.C. §§ 4241 and 4247. United States v. Gorman, 314 F.3d
1105, 1109 (9th Cir. 2002) (district court excluded the time between
date of defendant's motion for a competency evaluation and date of
competency hearing from the STA). For the reasons set forth above,
the time that the Court takes to reach its conclusion in
proceedings pursuant to (h)(1)(A), as well as (h)(1)(F), is wholly
excludable from the STA. Accord, STA Guidelines at 30(the ending
date of excludable time is the date on which the court has received
everything it expects from the examiner and the parties before
reaching a decision – that is, the date as of which the report of
examination has been received, all anticipated briefs have been
filed, and any necessary hearing has been completed).

pretrial motion);[6] <u>Noone</u>, 913 F.2d at 25 (filing of motion activated the automatic exclusion under subsections (h)(1)(A) (delay resulting from any proceeding to determine competency) and (h)(1)(F) (delay resulting from any pretrial motion)).  In sum, subsection (h)(1)(A) does not contain a "reasonableness" limitation, but instead excludes, without qualification, "any period of delay" resulting from "any proceeding" to determine mental competency.

Therefore, all of the time consumed as a result of the defendant's mental competency examination, from January 19, 2006, the date of the filing of the competency motion, through January 29, 2007, the date this Court found the defendant competent to stand trial, is excludable under subsection (h)(1)(A), notwithstanding the provisions of section (h)(1)(H).

### b.    <u>18 U.S.C. § 3161(h)(1)(F)</u>

Even without the specific mental competency exclusion under Section 3161(h)(1)(A), the time period from January 19, 2006 through January 29, 2007 is excludable under Section 3161(h)(1)(F) as "delay resulting from any pretrial motion."  Section 3161(h)(1)(F) provides for the exclusion of "[a]ny period of delay" including "delay resulting from any pretrial motion, from the

---

[6] The relevant sections of the <u>STA Guidelines</u> are attached as Appendix B for the Court's reference.  If the Court requires it, the Government will provide the Court with an entire copy of the double-sided, ninety-page publication.

filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." The motion for competency needed to be resolved before trial. Because the resolution of such motion was necessary, the time between the filing and the final resolution was excludable. Henderson v. United States, 476 U.S. 321, 327 (1986) (all delay, however reasonable, between filing of a motion and the hearing on the motion is excludable).

In Henderson, the Supreme Court reasoned that the provisions of the STA were designed to exclude "all time that is consumed in placing the trial court in a position to dispose of a motion," and, thus, interpreted subsection (h)(1)(F) as excluding all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing was "reasonably necessary." Id. at 330. The Supreme Court reasoned that it is often impossible to resolve motions on which hearings have been held until the parties have submitted relevant filings, and so, the time when a district court awaits those filings to resolve an issue is excludable. Id. at 331. By such reasoning, the time period from the filing of the January 19, 2006 motion, until the Court's resolution of the motion on January 29, 2007, is excludable.

The Ninth Circuit applied this reasoning, and subsection (h)(1)(F), in denying a defendant's Speedy Trial Act claims in

14

United States v. Tewid, 86 Fed.Appx. 224 (9th Cir. 2003).  In Tewid, almost two years passed during which the defendant's competency was not sufficiently resolved.  Citing subsection (h)(1)(H), Tewid argued that there were days during this period of time that should not have been excluded because there were transportation delays in excess of ten days.  The court denied Tewid's claims stating "the time in question was still excludable because it was separately attributable to a delay pertaining to proceedings associated with determining the mental competency of the defendant and resolving motions pertaining thereto."  Tewid, 86 Fed.Appx. at 225 (citing (h)(1)(F) and (h)(1)(H)).

Accordingly, in the instant case, the entire period from January 19, 2006 through January 29, 2007 is excludable pursuant to subsection (h)(1)(F).  See Tewid, 86 Fed.Appx. 224.  Accord, STA Guidelines at 36 (excludable time under subsection F begins on the date the motion is filed or made orally and ends on the date on which the court has received everything it expects from the parties before reaching a decision – that is, the date as of which the report of examination has been received, all anticipated briefs have been filed, and any necessary hearing has been completed).

### c.    18 U.S.C. § 3161(h)(4)

In any event, it is undisputable that, once this Court found the defendant to be incompetent, on May 26, 2006, the time thereafter is excludable pursuant to § 3161(h)(4), regardless of

the provisions of subsection (h)(1)(H). Subsection (h)(4) provides for the exclusion of "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." When a defendant has been found incompetent, § 3161(h)(4) is unambiguous in excluding delays resulting from the fact that the defendant is mentally incompetent. Any argument by Lewis that subsection (h)(1)(H) reduces the amount of excludable time provided for in section (h)(4) must fail. United States v. Degideo, 2004 WL 1240669 (E.D. PA 2004).

In Degideo, the defendant was found incompetent to stand trial and was committed to a treatment facility on January 25, 2001. On March 19, 2004, the defendant was finally found competent to stand trial. Seeking to dismiss the indictment, the defendant argued that section 3161(h)(1)(H) provided for a total of 200 nonexcludable days from the excludable delay otherwise provided by section 3161(h)(4).

The court, looking to Congress' intent in drafting section (h)(4), disagreed with the defendant. The court found that Congress clearly intended to create a specific period of excludable time when a defendant is mentally incompetent, and, as such, section(h)(4) trumps other sections of the STA, including section (h)(1)(H). Degideo, 2004 WL 11240669 at *4.

In addition, unlike section (h)(1)(H), which allows only a reasonable delay, section (h)(4) does not impose any limitations

16

or restrictions on the amount of time that may be excluded while a defendant is incompetent.  Id.  The court found that Congress, therefore, must not have intended to impose such a restriction, and to graft such a restriction onto the clear language of section (h)(4) would thwart the intent of Congress.  Id.

The court also found it instructive that when Congress drafted section (h)(4), it placed delays resulting from a defendant's mental incompetency side-by-side with delays resulting from a defendant's physical incapacity.  Id. at *5; see 18 U.S.C. § 3161(h)(4) (excluding period of delay resulting from defendant's mental incompetence or physical inability to stand trial).  "By drafting § 3161(h)(4) in the disjunctive, and equating mental incompetency with physical inability to stand trial, Congress clearly found that when a defendant's mental state prevents the defendant from meaningfully participating in her trial, the Speedy Trial act does not impact on a court's ability to delay the proceedings indefinitely until the defendant recovers, regardless of any other reason for delay."  Id.

The court went on to note that its holding was consistent with the reasoning applied by the Supreme Court in Henderson, supra, wherein the court interpreted § 3161(h)(1)(F) to exclude all time for pretrial motions, by finding that section (h)(1)(F) excludes "all time between the filing of a motion and the conclusion of the hearing on that motion whether or not a delay in

17

holding that hearing is reasonably necessary." Id. at *4 (quoting Henderson v. United States, 476 U.S. 321, 333 (1986)). As in Henderson, if Congress intended to exclude only reasonable periods of delay, it would have so provided. Id.

Thus, the Degideo court concluded that it would be error to make section (h)(1)(H) an exception to section (h)(4). Id. at *4. "Just as the Supreme Court refused to impose a 'reasonableness' requirement on any delays incurred while motions were pending, in Henderson, this Court will not construe § 3161(h)(4) to be limited by § 3161(h)(1)(H). As with § 3161(h)(1)(F), at issue in Henderson, § 3161(h)(4) contains no language regarding the reasonableness of delays." Id. Since the defendant was consistently found to be mentally incompetent during the challenged time frame, the court concluded that all of that time was excludable and denied the defendant's motion to dismiss. Id.

In the present case, the defendant arrived at the Metro Correctional Center in New York on March 28, 2006, and began his evaluation that day. The defendant's competency evaluation was complete on April 27, 2006. On May 11, 2006, a Competency Evaluation Report was prepared, and it was sent to the Court. On May 26, 2006, this Court held its first competency hearing for the defendant, and found the defendant not competent to stand trial. Finding the defendant not competent, the Court ordered the

18

defendant hospitalized pursuant to 18 U.S.C. § 4241.  The resulting period of delay, between May 26, 2006 until the date that this Court found the defendant competent to stand trial on January 29, 2007, is therefore wholly excludable pursuant to § 3161(h)(4) (excluding "any period of delay" resulting from the fact that the defendant is mentally incompetent to stand trial).  See Degideo, 2004 WL 1240669 (E.D. PA 2004).[7]

Accordingly, for all of the reasons set forth above, the entire period between January 23, 2006 through January 29, 2007, was excludable pursuant to §§ 3161(h)(1)(A), (h)(1)(F), and (h)(4), and case law construing those sections.  See Degideo, 2004 WL 1240669 (E.D. PA 2004).

> **3.    Alternatively, 62 Days Ran, and Were Not Excludable under the STA, Between the Date of the Arraignment on May 27, 2005, and the Date of the Competency Hearing on January 29, 2007.**

Even if this Court does not agree with the analysis above pursuant to §§ 3161(h)(1)(A), (h)(1)(F), and (h)(4), and cases including Vasquez, 918 F.2d 329; Tewid, 86 Fed. Appx. 224; Yazzie,

_____

[7] Incidentally, during this excludable time, after the Court entered its May 26, 2006 Order directing the defendant to a treatment facility, the defendant was promptly designated to a treatment facility in Springfield, Missouri, on June 8, 2006.  The defendant was transported to the treatment facility, via airlift and bus, and, after two days' travel, he arrived at the treatment facility on June 22, 2006. Following his treatment and evaluation, on November 17, 2006, the warden certified the defendant's competency.  The Court set a hearing date of January 29, 2007, to determine the defendant's competency, and the defendant did not object to the date of this hearing.  Following the hearing, the Court found the defendant competent.

2006 WL 2772636; Triumph, 2004 WL 1920352; and Degideo, 2004 WL 1240669; the defendant's calculation under the STA is, nonetheless, wholly incorrect. For the reasons set forth below, even pursuant to the case law that the defendant cites, United States v. Noone, 913 F.2d 210 (1st Cir. 1990), at most, 62 days ran and were not excludable under the STA. This is because, in arriving at his incorrect calculation under the STA, the defendant both misinterprets case law and makes a number of faulty assumptions about the STA.

> **a. Subsection (h)(1)(H) Was Not Automatically Triggered by the Court's January 19, 2006 Order.**

First, Lewis' initial calculation as to when the speedy trial clock started and stopped is erroneous, in that Lewis assumes that the transit time limit, pursuant to (h)(1)(H), began on January 19, 2006, the date of the Court's order directing a psychiatric exam, and ended on March 28, 2006, the date Lewis arrived at Metro Correctional Center in New York. He then assumes that the transportation time limit, § 3161(h)(1)(H), re-started on April 27, 2006, the date the competency evaluation was completed, and ended on May 18, 2006, the date Lewis was returned to the Erie County Prison (ECP). All of which occurred before this Court's May 26, 2006 hearing on the pending motion.

Lewis applies the same faulty assumptions to his latter transportation to and from the treatment facility in Missouri. He

assumes that the transportation time limit began on May 26, 2006, the date of the Court's order committing him to the treatment facility, and ended on June 22, 2006, when he arrived at the Missouri treatment facility. He then assumes that the transportation time limit started on November 9, 2006, the date the BOP notified the Marshals that Lewis could be returned, and ended on December 20, 2006, the date Lewis returned to ECP.

Such reasoning utterly ignores the fact that (h)(1)(H) limits transportation time where that time is <u>not</u> otherwise excludable – and, here, as discussed <u>supra</u>, the applicable exclusions for the time that passed are set forth in subsections (h)(1)(A) and (h)(1)(F), as well as (h)(4). As the <u>STA Guidelines</u> explain, when transportation is <u>not</u> subsumed under another exclusion, the starting date is the date of an order directing transportation of the defendant, and the ending date is the date of the defendant's arrival at the destination. <u>STA Guidelines</u>, at 43-44. The guidelines, however, do not give specific guidance for starting and ending dates when transportation *is* subsumed under another exclusion, as it is in the present case. <u>STA Guidelines</u>, at 43-44.

Thus, Lewis mistakenly assumes that the initial start date for the transportation exclusion, (h)(1)(H), was January 19, 2006, the date of the Court's Order for a competency evaluation.

The government submits, however, that subsection

21

(h)(1)(H) could not have been triggered until March 2006.  A close reading of section 3161(h)(1)(H) discloses that the ten day period begins "from the date [of] an order of removal or *an order directing such transportation*."  18 U.S.C. § 3161(h)(1)(H)(emphasis added).  In the present case, the January 19, 2006 Order for Psychiatric or Psychological Examination did not direct that Lewis be transported.  The Order directs that Lewis be committed to the custody of the Attorney General for a period not to exceed thirty days for a psychiatric examination, directs that a psychiatric report be prepared, directs that a competency hearing be scheduled following receipt of the report, and directs that "any delay resulting from the proceedings, including any examinations, to determine Lewis' competency shall be excluded under Title 18 U.S.C. § 3161(h)(1)(A)."  Nowhere does the Order direct that Lewis be transported to a place of examination.

Rather, the Order dated March 16, 2006 is the first Order directing the transportation of Lewis in relation to his competency evaluation.  Upon issuance of this Order, Lewis was designated the next day by the BOP to the Metro Correctional Center in New York. And, JPATS received a movement request from the Pittsburgh Marshall's Service three days later, on March 20, 2006.  JPATS promptly began transporting Lewis the following day - March 21, 2006 - and Lewis arrived at the place of examination on March 28, 2006.

22

Therefore, from the date of this Court's Order directing transportation of Lewis, twelve days passed. Only two of those days could be presumptively unreasonable pursuant to subsection (h)(1)(H).

Lewis also erroneously assumes, and misreads case law, to conclude that the minute his competency evaluation was completed, subsection (h)(1)(H) was again triggered, and that any time in excess of ten days from that day forward is not excludable from the STA. First, there is no court Order directing Lewis' transportation back to the Erie County Prison, nor are there subsequent court orders for the later transportation to the Missouri facility or the defendant's return to ECP. It is the government's position that subsection (h)(1)(H) was not triggered.

Second, Lewis' argument does not take into account the time it takes to complete the evaluation report, which was required by the Court's Order, and the time it takes to schedule and hold a hearing on the defendant's motion.

The defendant's argument in this regard is directly contrary to the holding in Noone, which the defendant nonetheless cites. In Noone, the court held that all time reasonably required "to consider the psychiatric examination report, and to schedule and conduct the hearing" was excludable pursuant to (h)(1)(A), which excludes any delay resulting from the proceeding to determine the competency of the defendant, notwithstanding the time limit in

23

(h)(1)(H).  913 F.2d at 26-27.  This brings the government to the defendant's second erroneous assumption.

### b.   The Operation of Subsection (h)(1)(H) During Periods of Otherwise Excludable Time.

As previously discussed, Lewis' filing of his pretrial Motion for Hearing to Determine Defendant's Competency automatically triggered the exclusions under subsections (h)(1)(A) and (h)(1)(F).  See, e.g., Noone, 913 F.2d at 25.  Lewis' filing of the motion also triggered other statutory requirements under 18 U.S.C. §§ 4241 and 4247.  These include (1) the commitment of Lewis for thirty days to complete the evaluation; (2) time for the completion and filing of a psychiatric or psychological report; and (3) time to schedule and hold a competency hearing.  18 U.S.C. §§ 4241(b),(c); 4247(b),(d).  As discussed in Noone, supra, the time it takes to complete the requirements of §§ 4241 and 4247 is excludable under subsections (h)(1)(A) and (h)(1)(F).

In Noone, at least twenty-six days passed between the time the Butner Correctional Facility, which conducted the defendant's competency evaluation, notified the Marshals Service that he was available for return and the time he was actually returned.  The court found that this time was nevertheless wholly excludable under section 3161(h)(1)(A) since, at a minimum, the subsection excludes a reasonable period of time pending delivery of the report to the court.  Noone, 913 F.2d at 26-27 (citing United States v. Howell, 719 F.2d 1258, 1261 (5th Cir. 1983)).

Furthermore, the court found that the time between receipt of the report and the hearing was also excludable, regardless of the defendant's transportation time.  Id. at 27 (citing United States v. Jones, 801 F.2d 204, 216 (8th Cir. 1986)).

Likewise, in the present case, Lewis' Metro Correctional Center competency evaluation was completed on April 27, 2006. Lewis argues that the government had only ten excludable days from that day to transport him back to ECP.  However, the competency evaluation report was not completed until May 11, 2006,[8] and the hearing did not take place until May 26, 2006.  Pursuant to statute, the Court is entitled to both the report and the hearing, and the time it takes to complete them is all excludable pursuant to both subsections (h)(1)(A) and (h)(1)(F).  To suggest that Lewis had to be transported immediately upon completion of the report when the speedy trial clock was being tolled on the Court's time anyway makes no sense.  Rather, pursuant to Noone, 913 F.2d at 27, n.10, the time pending delivery of the report to the Court and the time between receipt of the report and the hearing were also excludable, regardless of the time it took to transport Lewis.[9]

---

[8] The record does not reflect when the Court received the competency evaluation report.

[9] It is worth noting that the Court *shall* have a hearing upon receiving certification of the defendant's competency.  18 U.S.C. § 4241(e).  If after the hearing, the Court determines that the defendant is competent, "the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial."  Id.

Further, there was no "delay" in transporting Lewis back to Erie in time for his hearing. Lewis left Metro Correctional Center on May 10, 2006, prior to completion of the report, and arrived at ECP on May 18, 2006, eight days prior to the hearing. Notably, the time it took to transport Lewis was less than ten days.

After receiving an inconclusive report, due to Lewis' suspected malingering (which was later confirmed), the Court, pursuant to 18 U.S.C. § 4241(d), found that Lewis should be committed to a treatment facility to determine whether there was a reasonable probability that Lewis would be able to proceed with the trial in the future. The Court issued its Order on May 26, 2006, and pursuant to 18 U.S.C. § 3161(h)(4), the period of delay until Lewis was deemed competent was thereafter excludable. <u>Degideo</u>, 2004 WL 1240669.

Given all of the above, if we assume *arguendo* that, after the Court's Order dated January 19, 2006, the speedy trial clock then began to run, it would have only run from February 3, 2006, (ten days after January 23, 2006, the date to which the defendant had continued his trial), until March 28, 2006 (the date Lewis arrived at Metro Correctional facility). This consists of a total of 53 days, which, when added to the 9 days that ran following the defendant's arraignment, brings the total of nonexcludable days to

62 days.[10]   In any event, as set forth above, the period during which the defendant's competence was evaluated, until the Court received the evaluator's report and held a hearing finding the defendant incompetent, is excludable.   See Noone, 913 F.2d 20. Thereafter, all of the time following the May 26, 2006 Order finding the defendant incompetent is wholly excludable regardless of the reasonableness of transportation time.   Degideo, 2004 WL 1240669 at *4.

**c.    The Defendant's Mistaken Assumption as to the Definition of "Transportation."**

Finally, section 3161(h)(1)(H) refers to delay resulting from transportation.   "Transportation" is defined as "the act of transporting" or "the state of being transported."   Webster's College Dictionary (1991).   Likewise "transport" is defined as "to carry, move, or convey from one place to another."   Id.   The government submits that the reference to transportation in subsection (h)(1)(H) refers to the actual time that the defendant is in transit to and from evaluation or treatment facilities.   It does not refer to the time during which the defendant is being designated to a facility nor the time that a defendant is waiting for the transportation process to begin.   Rather, transportation

---

[10] Or, 66 days would have run from January 30, 2006, if this Court calculates the ten-day limitation under section (h)(1)(H) to run immediately after its January 19, 2006 Order, regardless of whether exclusions would otherwise apply (i.e., the defendant's request to continue the trial date).

occurs upon the first movement of the defendant toward his ultimate destination.

The government's argument finds support in Noone, supra. Therein, the court noted that it was not necessary to consider the defendant's claim that all time in excess of ten days spent transporting him from Butner Correctional Facility back to Massachusetts was non-excludable under subsection (h)(1)(H), because the defendant's claim assumed he *was in transit* more than ten days. Noone, 913 F.2d at 26, n.9 (emphasis added).

> All the record reveals is that he was still at Butner on December 19, 1988, and that he was in Massachusetts on January 6, 1989. Without any evidence as to when he left Butner, or when he arrived in Massachusetts, we do not assume that Noone was in transit beyond the ten-day period presumed reasonable under subparagraph H.

Noone, 913 F.2d at 26, n.9.

Clearly, the court interpreted subsection (h)(1)(H) as referring to actual time spent in transit, that being the time between the day the defendant left the evaluation facility and the day the defendant was returned to the facility in the prosecuting jurisdiction from whence he came. To interpret subsection (h)(1)(H) otherwise would result in not giving plain meaning to the word "transportation."

In the present case, Lewis spent only seven days in transit from Pittsburgh to the Metro Correctional Center in New York. Specifically, he was transported from Erie to Pittsburgh and

airlifted from Pittsburgh to Oklahoma on March 21, 2006, and he was then airlifted from Oklahoma to New York where he arrived at the facility on March 28, 2006.  Therefore, this seven-day period should be excluded pursuant to subsection (h)(1)(H), and the period from January 19, 2006 through March 20, 2006 should be excluded pursuant to subsection (h)(1)(A).

After his competency evaluation at Metro Correctional Center, Lewis was airlifted on May 10, 2006, from New York to Oklahoma.  On May 16, 2006, Lewis was airlifted from Oklahoma to Pittsburgh, and he arrived at the Erie County Prison on May 18, 2006.  Therefore, Lewis only spent eight days in transit from Metro Correctional Center to the Erie County Prison, all of which are excludable pursuant to subsection H.  The time frame immediately prior, consisting of Lewis' evaluation and the completion of the competency report (March 28, 2006 through May 11, 2006) should be excluded pursuant to subsection (h)(1)(A).

Likewise, the time from May 18, 2006, through the competency hearing on May 26, 2006, and through the date Lewis entered transit again should be excluded pursuant to subsection (h)(1)(A).  Upon the Court's Order directing the defendant to a treatment facility, Lewis was transported from Erie to Pittsburgh on June 15, 2006, and was airlifted from Pittsburgh to Oklahoma on June 20, 2006.  He arrived via bus at the Missouri treatment facility on June 22, 2006.  Lewis was only in transit for eight

days, all of which are excludable pursuant to subsection (h)(1)(H).
The intervening time frame until Lewis re-entered transit back to
Erie is excludable pursuant to subsection (h)(1)(A).  Lewis was
transported via bus from Missouri to Oklahoma on December 6, 2006.
He was subsequently airlifted from Oklahoma to Pittsburgh on
December 12, 2006, and he arrived at the Erie County Prison on
December 20, 2006.  Lewis was in transit for fourteen days, ten of
which are excludable from the STA calculation.  Therefore, a total
of only four days from the time the defendant filed his motion for
competency evaluation until the final determination of his
competency on January 29, 2007, are arguably not excludable from
subsection (h)(1)(H) (without reference, of course, to subsections
(h)(1)(A) and (h)(1)(F) as well as (h)(4)).

    **B.**    **If the Court Finds That More than 70 Days Have Run On The STA Clock, this Court's Dismissal Should Be  Without Prejudice.**

If this Court nevertheless finds that the STA was
violated, its inquiry is not at an end.  The STA provides that if
a defendant is not brought to trial within the time limit required
by section 3161(c) as extended by section 3161(h), the indictment
shall be dismissed on motion of the defendant.  18 U.S.C. §
3162(a)(2).  However, the court must determine whether to dismiss
the indictment with or without prejudice, and, in making its
determination it shall consider, among others, each of the
following factors:

(1)   the seriousness of the offense;

(2)   the facts and circumstances of the case
      which led to the dismissal; and

(3)   the impact of a reprosecution on the
      administration of this chapter and on the
      administration of justice

18 U.S.C. § 3162(a)(2), see also, United States v. Taylor, 487 U.S.
326, 333 (1988).

The government disagrees with the defendant's contention
that being a prohibited person in possession of a firearm is not a
particularly serious offense.   (Def. Motn., ¶ 30).   Congress
expressed its concern about convicted felons, like the defendant,
possessing firearms, and so federal law prohibits convicted felons,
like the defendant, from possessing them.   Caron v. United States,
524 U.S. 308, 309 (1998) (citing 18 U.S.C. §922(g)(1)).   And, this
particular criminal defendant has a very significant criminal
history.   At a minimum, Lewis' advisory sentencing guidelines range
is estimated to be 92 to 115 months' imprisonment, and, if 18
U.S.C. § 924(e) applies, the applicable range is 15 years to life.
The current charge, combined with Lewis' extensive criminal history
and exposure to a possible life sentence, reflects the seriousness
of the charge against him.   See e.g., United States v. Hope, 202
F.Supp.2d 458, 460 (E.D. N.C. 2001) (charges of possession with the
intent to distribute at least 50 grams of crack and felon in
possession of a firearm, when considered in conjunction with
defendant's previous felony convictions, expose the defendant to a

31

possible life sentence, revealing the seriousness of the offenses charged).

Additionally, the facts and circumstances in this case do not show any systemic governmental problem that could warrant a dismissal with prejudice as the defendant suggests. (Def. Motn. ¶26-29). Actually, with the exception of the initial period of delay, which the government discusses more fully below, there was constant activity by various governmental agencies on Lewis' behalf.

First, there was an initial delay between the date of this Court's Order, January 19, 2006, until March 28, 2006, the date that the defendant arrived at the location where his examination was to take place. Based on its own investigation, this Court has been made aware of at least some of the reasons causing this period of delay. Specifically, when the Court issued its January 19, 2006 Order, the Clerks Office was not directed by the Order or by the deputy clerk to provide a certified, raised seal copy to the Marshals Service, which is necessary for the Marshals Service to begin the designation process with the BOP. It was only upon defense counsel's inquiry and subsequent Motion to Expedite Competency Hearing that this fact came to light. It is the government's understanding that through its investigation, the Court determined that if the Order does not direct the Clerks Office to provide a certified copy to the Marshals, it is then the

deputy courtroom clerk's responsibility to see that the Marshals
Service receives a certified Order.

Upon defense counsel's inquiry, the Marshals Service took
it upon itself to obtain a certified Order, which was dated
February 23, 2006.  The Marshals, on March 3, 2006, then sent the
certified Order to the BOP requesting that Lewis be designated to
a suitable facility.  The circumstances of this administrative
error, even if the time is chargeable to the government, weighs
against a finding that the case should be dismissed with prejudice.
And, more importantly, it demonstrates that the circumstances of
this case are not an example of a systemic governmental problem in
transporting defendants to and from competency evaluations.

Furthermore, the prompt steps that were taken by the BOP,
the Marshals Service, and the treatment facilities thereafter,
demonstrate a good faith and efficient effort on everyone's part to
effectuate the Court's Orders.  As outlined in the procedural
history above and Appendix B, after the Court's March 16, 2006
Order, Lewis was both designated and transported within reasonable
periods of time throughout the remainder of the competency
proceedings.[11]

---

[11]In 1995, the air fleets of the Marshals Service and the
Bureau of Immigration and Customs Enforcement merged to create the
Justice Prisoner and Alien Transportation System (JPATS), a more
efficient and effective system for transporting prisoners and
criminal aliens.  JPATS handles more that 1,000 requests every day
to move prisoners between judicial districts, correctional
institutions and foreign countries.  Using a network of aircraft,

Moreover, Lewis' own actions should not be ignored when considering the facts and circumstances leading to dismissal of the case.  On the day before he was scheduled to change his plea to guilty, Lewis filed his Motion for Competency Hearing.  The May 11, 2006 competency evaluation report is replete with references to Lewis' probable malingering, his exaggeration of deficits, his superficial cooperativeness, and his failure to be forthcoming. (See May 11, 2006 Competency to Stand Trial Evaluation, pp. 2, 6-9).  In fact, the report indicates that its ultimate opinion, that the defendant was not competent, was rendered with less than the usual degree of psychological certainty.

Likewise, the second November 6, 2006 Forensic Report indicates that Lewis did not put forth appropriate effort during testing, intentionally attempted to appear impaired, grossly exaggerated deficits, and malingered (November 6, 2006 Forensic Report, pp. 8-14).

These reports indicate that Lewis' request to determine his competency was merely an attempt to avoid prosecution.  To dismiss the indictment with prejudice would do nothing more than reward a malingering defendant and serve to set a precedent for other defendants to file similar motions in an effort to possibly have their cases dismissed for STA violations.

---

cars, vans, and buses, JPATS completes an average of more than 305,000 prisoner and alien movements per year, with higher security and at a fraction of what commercial sources would charge.

The impact of a reprosecution on the administration of this chapter and on the administration of justice also do not weigh in favor of dismissal with prejudice.  As noted by the Supreme Court, the STA does not require dismissal with prejudice for every violation.  <u>Taylor</u>, 487 U.S. at 342.  Furthermore, dismissal without prejudice is not a toothless sanction because it forces the government to obtain a new indictment and exposes it to dismissal on statute of limitations grounds.  <u>Id.</u>

Moreover, no prejudice inured to Lewis.  Indeed, Lewis does not even assert that he was prejudiced by the delay in this case.  Instead, Lewis' argument focuses on an unsupportable claim that the Marshals Service's transportation system is a systemic governmental problem.

Although the absence of prejudice to a defendant is not dispositive, it is a factor to be weighed by the Court.  <u>See</u> <u>Taylor</u>, 487 U.S. at 341.  Here, Lewis was not prejudiced in his preparation for trial.  And, notably, he would have been incarcerated throughout this time period anyway pursuant to the detention order and California's outstanding warrant for his arrest for violating probation by being in Pennsylvania and possessing a firearm.

In addition, the delays in this case were the result of proceedings to determine Lewis' mental competency to stand trial.  And, far from being prejudiced by these proceedings, the

35

defendant's interests were served by them, so that he would not be prosecuted if he was incompetent to proceed.  See United States v. Dale, 426 F. Supp. 675, 679 (S.D.N.Y. 1976) (delay for purposes of determining competency required by law to protect defendant from conviction while mentally incompetent).

Based on the facts and circumstances of this case, the government did not act in bad faith nor flaunt the STA provisions. Therefore, based on all of the statutory factors and all other circumstances of this case, the government respectfully submits that if this Court finds that it must dismiss the indictment, that it do so without prejudice.

IV.  **CONCLUSION**

WHEREFORE, the government respectfully requests that the Court deny the defendant's Motion to Dismiss, and in the alternative, if the Court does dismiss the indictment, that it do so without prejudice.


Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


/s/ Christine A. Sanner
CHRISTINE A. SANNER
Assistant U.S. Attorney
PA ID No. 85039