IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 05-24 Erie |
| | ) |
| BARRY WAYNE LEWIS | ) |

**DEFENDANT BARRY WAYNE LEWIS' REPLY TO GOVERNMENT'S
RESPONSE TO MOTION TO DISMISS INDICTMENT
WITH PREJUDICE FOR SPEEDY TRIAL ACT VIOLATION**

AND NOW, comes the defendant, Barry Wayne Lewis, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files his Reply to the Government's Response to his Motion to Dismiss Indictment With Prejudice For Speedy Trial Act Violation.  In support thereof Counsel states:

THIS COURT'S JANUARY 19, 2006 ORDER

The government argues that the Court's January 19, 2006, order did not amount to an order to transport Mr. Lewis.  Gov. Response 20-21.  A plain reading of the Court's order, and the Marshals Services' response thereto, refutes that contention.

The Court's order reads in pertinent part:

**THE COURT ORDERS** pursuant to 18 U.S.C. §§4241(b), 4247(b) and (c), that the defendant be committed to the custody of the Attorney General for a reasonable period, not to exceed thirty days, during which psychiatric or psychological examinations shall be conducted upon the defendant.  Such examination, which shall be conducted in a suitable facility closest to the court and pursuant to 18 U.S.C. §4247(c), shall determine whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to properly assist in his defense and his competency to stand trial.

This order directs Mr. Lewis' examination to take place in a suitable facility closest to the Court and

orders the Attorney General to take Mr. Lewis to that facility and bring him back.

The frivolity of the government's argument is revealed by its own explanation of the events in this case. The government's response provides the following explanation of events:

> On January 19, 2006, the day before he was scheduled to plead guilty, the defendant filed a Motion for Competency Determination. This Court granted the motion that same day.
>
> At this point, some degree of confusion sets in, because, although the Court's January 19, 2006 Order was electronically filed, a certified, raised seal copy of the Order was not provided to the Marshals Service. In this case, the Marshals Service did not receive a copy of the Order until February 23, 2006.
>
> After the Marshals Service in Erie received a certified copy of the Order on February 23, 2006, the Order was then sent to the Marshals Service in Pittsburgh. And, on March 3, 2006, the certified, raised seal copy of the Order was sent from th Pittsburgh Marshals Service to the Bureau of Prison (BOP) to request a designation for Lewis to a facility.

Gov. Response p. 5. Even under the government's version of events, the Court's order of January 19, 2006, constituted an order to transport Mr. Lewis but the Marshals Service chose to ignore the order until it received a paper copy of the order with a raised seal. To claim that the January 19, 2006 order was not an order to transport Mr. Lewis ignores the plain language of the order and is belied by the Marshals Services' treatment of the order as requiring a designation and transportation.

The time period in which the Marshals Service did not act because it was not presented with a certified hard copy of the order counts against the government. Under this Court's Electronic Case Filing Policies and Procedures,

> A document entered or issued by the court will be filed in accordance with this Order and such filing shall constitute entry on the docket kept by the clerk under Fed.R.Civ.P. 58 and 79, and Fed.R.Crim.P. 55.
>
> All signed orders will be filed electronically by the court or court personnel. An order filed electronically without the original signature of a judge shall have the

>same force and effect as if the judge had affixed a signature to a paper copy of the order and the order had been entered on the docket in a conventional manner.

ELECTRONIC CASE FILING POLICIES AND PROCEDURES p.3.  Under these policies, when this Court electronically filed its order on January 19, 2006, that order was binding and had to be followed.  If the Marshals Service chooses for its own purposes to ask for certified hard copies of court orders, it is incumbent on them to take the necessary steps to obtain the certified hard copies.  The Marshals Service is not at liberty to ignore a valid order of this Court simply because it prefers to receive the order in a different form.

### SECTION 3161(h)(1)(H) INCLUDES ALL TIME FROM THE ORDER DIRECTING TRANSPORTATION TO ARRIVAL AT THE ULTIMATE DESTINATION

The government argues that § 3161(h)(1)(H) at best only excludes time that a defendant is actually being moved by the United States Marshals Service.  Gov. Response, p. 27.  That argument is directly refuted by the language of the statute.  Title 18 U.S.C. § 3161(h)(1)(H) states

>(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
>>(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
>>
>>>(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, **except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable**;

Title 18 U.S.C. § 3161(h)(1)(H) (emphasis added).  The statute directs that the transportation delay clock begins running with the filing of the order directing transportation and ends when the

defendant arrives at the ultimate destination. The same calculations apply to the defendant's transportation back from the examination or hospitalization to his original starting point. The government chooses to ignore this language. For the government's theory to be correct, the statute would have to state that "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time actually spent in transit in excess of ten days shall be presumed to be unreasonable." This Court can not rewrite the statute to save the government. Congress chose the date of the order directing transportation as the starting point of the ten-day exclusion period. The legislative history of the Speedy Trial Act reveals that Congress considered, but rejected, the government's reading of the statute. The House Report accompanying the Speedy Trial Act specifically rejected the Justice Department's objection to the Act on the grounds that the Marshals Service preferred to delay the movement of prisoners for reasons of convenience. H.Rep. No. 1508, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7401, 7423-24; United States v. Taylor, 821 F.2d 1377, 1384 n.10 (9th Cir. 1987), rev'd on other grounds, 487 U.S. 326, 108 S.Ct. 2413 (1988). As the Ninth Circuit has explained, "[t]he legislative history indicates that delays to accommodate the USMS, in its desire to effect economical transportation of prisoners in larger groups, are not excludable under the Act." Taylor, 821 F.2d at 1384.

The plain language of § 3161(h)(1)(H) also requires that the limit on transportation delays applies to the return from places of examination. The statute covers delays due to transportation "to and from places of examination" and mandates that any time consumed in excess of ten days is presumed to be unreasonable. Dr. Ryan concluded his examination of Mr. Lewis on April 27, 2006, and informed the Inmate Systems Manager that Mr. Lewis could be returned to his designated

facility. Mr. Lewis did not arrive back at the Erie County Prison until May 18, 2006. Any time taken to transport Mr. Lewis back to Erie County Prison in excess of ten days is presumptively unreasonable. Thus, the time period between May 8, 2006 through May 18, 2006, ten days, is presumptively unreasonable. Even under the government's calculations, more than ten days elapsed between the time the Marshals Service in New York submitted a movement request to JPATS on May 5, 2006, and Mr. Lewis' arrival at the Erie County Prison on May 18, 2006. Gov. Response App. B, p.2. With the nine days that the government agrees elapsed before the first motion to extend the time to file pretrial motions, the 58 days beyond ten days to get Mr. Lewis to MCC New York, and the three days in excess of ten days from the time the Marshals Service made the request to return Mr. Lewis to Erie County Prison and his arrival there, exactly 70 days of non-excludable time has elapsed from the Speedy Trial clock, and the indictment must be dismissed.

The government's reliance on United States v. Noone, 913 F.2d 20, 26 n.9 (1st Cir. 1990), for the proposition that § 3161(h)(1)(H) does not apply to the return trip from the place of examination is misplaced. Noone refused to apply § 3161(h)(1)(H) to the defendant's return from his psychological examination based on its belief that the defendant had not produced sufficient proof that he was in transit beyond ten days. Id. Thus, the First Circuit based its decision on lack of evidence, not a finding that § 3161(h)(1)(H) did not apply. It is true that the First Circuit focused on time in transit rather than the time that passed from the order directing transportation and arrival at the ultimate destination. As Mr. Lewis has previously established, supra, the Speed Trial Act does not focus on time in transit but rather the amount of time that passes from the order directing transportation being entered and arrival at the ultimate destination.

The government's insistence that the time period after the examination is not covered by §

5

3161(h)(1)(H) once again ignores the language of the statute. Section 3161(h)(1)(H) specifically covers "delay resulting from transportation of any defendant . . . **to or from** places of examination or hospitalization." Accordingly, the transportation from the place of examination back to the original starting point is also covered. Since this Court's order directed the transportation for the limited purpose of a psychiatric or psychological examination, the only logical event for triggering the clock for the return trip is official notification that the examination is complete. Once the examination is complete, the purposes of the transportation is complete, and the defendant must be returned so that a competency hearing can occur promptly. In this case, Dr. Ryan notified the Inmate Systems Manager that the examination was completed as of April 27, 2006.

## CONCLUSION

Mr. Lewis' original motion refutes the remainder of the government's arguments. The government's response asks this Court to ignore the plain wording of the Speedy Trial Act and render an entire subsection of that act superfluous. That, fortunately, is not how Courts are to engage in statutory construction, and when this Court applies the plain language of the statute it will concluded that the indictment must be dismissed with prejudice.

                                            Respectfully submitted,

                                            /s/ Thomas W. Patton
                                            Thomas W. Patton
                                            Assistant Federal Public Defender
                                            PA I.D. No. 88653