IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-24 Erie |
| ) | |
| BARRY WAYNE LEWIS ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING FACTORS
AND MOTION FOR UPWARD DEPARTURE**

AND NOW, comes the United States of America, by its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christine A. Sanner, Assistant United States Attorney for said district, and states:

As the Presentence Investigation Report ("PSR") reflects, the defendant has, among his seven prior convictions, three convictions for violent felonies. His three prior violent felonies include convictions for: Abduction; Assault with a Deadly Weapon; and Burglary. PSR ¶ 27.

Beyond dispute, the defendant's prior convictions for Assault with a Deadly Weapon, and for Abduction, are convictions for violent felonies pursuant to Title 18 U.S.C. § 924(e) (defining "violent felony"). See, e.g., United States v. Kaplansky, 42 F.3d 320 (6th Cir. 1994) (abduction; listing cases); United States v. Altsman, 89 Fed. Appx. 357 (3d Cir. 2004) (citing Kaplansky); United States v. Barnette, 203 Fed. Appx. 518 (4th Cir. 2006) (assault with a deadly weapon). However, the defendant argues that

his conviction for Burglary is not a conviction for a "violent felony" pursuant to section 924(e).

Title 18 U.S.C. § 924(e), popularly known as the Armed Career Criminal Act ("ACCA"), mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or "violent felonies." Section 924(e)(2)(B) specifically defines "violent felony" to include "burglary." 18 U.S.C. § 924(e)(2)(B)(ii) ("the term 'violent felony' means . . . . burglary").

But, the defendant asserts that his prior burglary conviction is not a "violent felony" under ACCA because the Ohio burglary statute with which he was convicted contains language that is too broad.

In Taylor, the Supreme Court construed the term "burglary" as used in ACCA, 18 U.S.C. § 924(e). Taylor v. United States, 495 U.S. 575 (1990). The Taylor Court held that Congress intended, under ACCA, a broader definition of the term "burglary" than that derived from common-law. Id. at 595. Specifically, what "Congress meant by 'burglary' [is] the generic sense in which the term is now used in the criminal codes of most States." The Court thus determined that "the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

Taylor recognized, however, that some state burglary statutes may be overly broad, to include offenses committed in places "other than buildings," such as automobiles, vending machines, tents, boats, and railroad cars. Id. at 599. Such offenses would not categorically be subject to a § 924(e) enhancement. However, a conviction under an overly broad statute will result in an enhancement when the charging documents, or certain other conclusive adjudicative records, establish that the defendant was convicted of a "generic" burglary, that is, a burglary that occurred in a "building or other structure." Id. at 599.

In determining whether the defendant has been convicted of a "generic" burglary under ACCA, the Court may not look to police reports. Shepard v. United States, 544 U.S. 13 (2005); but see United States v. Leekins, 2007 WL 1858226, at *5 (3rd Cir. June 29, 2007) (limiting Shepard). Instead, the Court should look to the terms of the charging document, the plea agreement, the transcript of the plea colloquy, or to "some comparable judicial record." 544 U.S. at 26; 2007 WL 1858226, at *5.

In the instant case, the charging document shows that the defendant was, in fact, convicted of a "generic" burglary. Taylor, 495 U.S. at 599; Shepard, 544 U.S. at 26. In this case, the charging document, the indictment, specifically narrows the charge against the defendant to generic limits by charging him with

burglarizing a specific occupied structure: the "building or other structure" burglarized, see Taylor, was the "habitation of Adelbert Cross."  Ex. 1 (Indictment filed on October 2, 1990).

The defendant was thus charged with, and convicted of, burglarizing Mr. Cross's "home." State v. Veal, 355 N.E. 2d 521, 524 (Oh. App. 1975) ("habitation" means "home").[1]  As the defendant was specifically indicted for burglarizing Adelbert Cross's home, his habitation, the defendant was indicted for committing a generic burglary. Taylor, 495 U.S. at 599; Shepard, 544 U.S. at 26. See also, e.g., United States v. Spring, 80 F.3d 1450, 1462 (10th Cir. 1996) (burglary of "habitation" under Texas statute was a generic burglary under Taylor); United States v. Mahon, 444 F.3d 530 (6th Cir. 2006) (Ohio burglary of even an unoccupied structure was both a "generic burglary" under Taylor and a violent felony under ACCA). Accord, United States v. Bennett, 100 F.3d 1105 (3d Cir. 1996) (construing Pennsylvania burglary statute).

In the instant case, the defendant was initially charged with committing an aggravated burglary, in violation of Ohio Revised Code § 2911.11.  Aggravated burglary occurs when the offender: 1) inflicts physical harm; 2) has a deadly weapon; or, 3) when "any person is present."  Id. § 2911.11(A)(1), (A)(2) and (A)(3).

---

[1] Accord, e.g., Chicago Manual Style, Dictionary.com Unabridged (v 1.1). Random House, Inc. (June 22, 2007) (defining "habitation" as "a place of residence; dwelling; abode").

4

On the day that the defendant entered his plea, the indictment was amended to charge him with Burglary, rather than Aggravated Burglary. See Ex. 2 (Journal Entry dated February 12, 1991, at CR-255224, in the Court of Common Pleas, State of Ohio, Cuyahoga County) (stating that "Prosecution's Motion to Amend Indictment to read 'Burglary' is granted."). This was the only change made to the indictment; no other language in the indictment was amended. See Exs. 1, 2, 3 (Entry of Judgment).[2] As no other amendments were made to the indictment, the indictment continued to charge the defendant with the burglary, but not the aggravated burglary, of the "habitation of Adelbert Cross." See id. The

---

[2] In fact, a state court has no general authority to amend or alter an indictment as to matters of substance. See, e.g., United States v. Stamp, 458 F.2d 759 (D.C. Cir. 1971) (indictment must be found by grand jury and cannot be interfered with by judge). However, courts may amend indictments to correct mere defects of form. See, e.g., Montgomery v. State, 891 So. 2d 179 (Miss. 2004). For example, an error in the citation or designation of the criminal statute upon which the indictment was based is only a formal defect that is generally correctable by amendment, where the offense is sufficiently charged by the substantive allegations. See, e.g., Commonwealth v Martinez, 380 A.2d 747 (Pa. 1977); United States v. Choy Kum, 91 F. Supp. 769 (DC Cal. 1950) (incorrect statute cited in the caption formed no part of the substantive charge and the citation was properly amended). In the instant case, the amendment merely conformed the caption with the language substantively charged. See Ex. 1 (Indictment) and Ex. 4 (Ohio burglary statute). Substantively, the defendant was charged with burglarizing Mr. Cross's "habitation," his home. Ex. 1 (Indictment). Despite the caption, which listed "Aggravated Burglary," the defendant was not substantively charged with using a deadly weapon, or with burglarizing Mr. Cross's home while Mr. Cross was present. Compare Ex. 1 (Indictment) with Ex. 5 (Ohio aggravated burglary statute). The amendment thus merely conformed the caption with the substantive burglary charge set forth in the body of the indictment.

defendant burglarized Adelbert Cross's <u>home</u>, and the indictment therefore charges a generic burglary under <u>Taylor</u>. <u>Taylor</u>, 495 U.S. at 599.

The simple amendment, deleting the term "Aggravated," did not change the other language in the indictment. The formal amendment of the term "burglary" from "aggravated burglary" did not change the fact that, as the indictment continued to set forth, the defendant was charged with burglarizing Mr. Cross's home, his "habitation." <u>See</u> Ex. 1 (Indictment).

During the burglary of his home, Mr. Cross was not physically present: he was in the hospital recovering from an infection. <u>See</u> PSR ¶ 34; and <u>compare</u> <u>id</u>. § 2911.11(A)(3) (aggravated burglary occurs when "any person is present").

Likewise, the defendant did not carry a deadly weapon when he burglarized Mr. Cross's home, as would have established aggravated burglary. <u>See</u> Ex. 1 (Indictment); and <u>compare</u> <u>id</u>. §§ 2911.11(A)(1) and (A)(2) (aggravated burglary occurs when the offender has a deadly weapon, or inflicts physical harm).

The amendment, then, merely conformed the indictment's caption with its substance, and the defendant may not portray the court's amendment to the indictment as though the court amended more than it did. The amended indictment continued to charge the defendant with burglarizing Mr. Cross's "habitation." The amendment did not change or delete the language about Mr. Cross's

habitation, and the indictment thus establishes a generic burglary under Taylor.  495 U.S. at 599; see also United States v. Lane, 909 F.2d 895 (6th Cir. 1990) (finding it is "necessary to examine the indictment" to determine if a defendant was charged with the burglary of a building.)  While Shepard prohibits this Court from looking at the underlying police report, Shepard does not permit the defendant to pretend that he was charged with burglarizing Mr. Cross's car or boat.  The defendant was not charged with burglarizing Mr. Cross's car, or boat, or vending machine.  He was charged with, and pleaded guilty to, burglarizing Mr. Cross's home, his "habitation."

In any event, quite aside from the fact that the defendant committed a generic burglary under Taylor, the Sixth Circuit has also stated that in Ohio, burglary -- and even attempted burglary -- falls within the "otherwise" clause of ACCA, 18 U.S.C. § 924(e).  This is so since "burglary in Ohio 'presents a serious potential risk of physical injury to another' because the burglary statute requires the actual or likely presence of a person in the burglarized structure."  Lane, 909 F.2d at 903 (quoting ACCA, § 924(e)(2)(B)(ii)).

In Ohio, the burglary statute specifically criminalizes burglaries committed in "occupied structure[s]."  Lane, 909 F.2d at 903 (citing Ohio Revised Code § 2911.12).  An "occupied structure" is defined as a place "in which a person is actually or likely to

be present." Id. (citing § 2909.01). The Sixth Circuit in Lane noted that: "The definition's general concept is that the actual or likely presence of a person in a structure, regardless of the nature of the structure itself, creates a more serious risk of harm" and that, therefore, burglary under the Ohio statute is a "violent felony" warranting an enhancement under ACCA's "otherwise" clause, § 924(e)(2)(B)(ii). Id. (citation omitted).

For all of these reasons, the defendant's prior conviction for burglary in Ohio is a "violent felony" pursuant to ACCA, § 924(e)(2)(B).

However, if this Court should find that the defendant's prior burglary conviction is not a "violent felony" pursuant to ACCA, § 924(e), it should then depart upward from the advisory guideline range.

An upward departure is warranted when reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. U.S.S.G. §4A1.3. Accord, § 4B1.4 (implementing ACCA, 18 U.S.C. § 924(e) and stating, "In some cases, the criminal history category may not adequately reflect the defendant's criminal history.").[3]

---

[3] Even under the mandatory sentencing guideline regime, an upward departure pursuant to §4A1.3 was within the sentencing court's discretion, as evidenced by the language "may be

In construing section 4A1.3, the Third Circuit has noted that section 4A1.3 is an integral part of Chapter Four of the Guidelines, entitled "Criminal History and Criminal Livelihood," and establishes a system for classifying the severity of a defendant's prior criminal conduct so that recidivism will be fairly and accurately taken into account in calculating sentences. United States v. Shoupe, 988 F.2d 440, 445 (3d Cir. 1993) (citing U.S.S.G. Chapter Four, Part A, *Introductory Commentary*).

Recognizing that precise calibration of criminal history is impossible because of the infinite variations of criminal backgrounds, the Commission incorporated section 4A1.3 into the Guidelines to provide the district courts with flexibility to adjust the criminal history category calculated through the rigid formulae of sections 4A1.1 or 4B1.1. Shoupe, 988 F.2d at 445.

In the present case, the defendant has an extremely lengthy criminal history, dating back to 1978, when he was 19 years of age. The defendant has seven adult convictions, and many additional arrests. However, the defendant was not assessed any criminal history points at all for the first <u>five</u> of his seven adult convictions. If the time limitations did not prevent the defendant's older sentences from being counted, see §4A1.2(e)(3), the defendant's criminal history category would be VI, instead of

---

warranted". U.S. v. Dinges, 2007 WL 1623890 *1 n.1 (3d Cir. June 6, 2007); U.S. v. Hertzog, 186 Fed.Appx. 314, 317 n.**(3d Cir. 2006).

IV.  Thus, his criminal history category would have been higher than that provided for by the armed career criminal provision. See U.S.S.G. § 4B1.4(c) (providing that the criminal history category for an armed career criminal is the greater of the criminal history category determined from Chapter Four or Category IV).

But, the mere fact that the defendant's criminal history category would have been VI had these older offenses been counted is not the only significant fact concerning these offenses.  The defendant's older, uncounted sentences are for very serious crimes: Carrying a Concealed Weapon, Aggravated Menacing, Abduction, Burglary, and Battery.  These are all offenses involving some form of violence.  And, the defendant's violent conduct continued into the countable period, during which he was sentenced for Obstructing or Resisting a Public Officer and Assault with a Deadly Weapon.  A review of the Presentence Report quickly discloses that, since age 19, the defendant has consistently engaged in repeated acts of criminally violent conduct.

It is also notable that the defendant's prior offenses often involved weapons.  In 1978, he was convicted of carrying a concealed weapon.  In 1980, he was arrested and charged with Felonious Assault with a Gun and Coercion, but ultimately pled to Aggravated Menacing.  And, in 1994, he pled guilty to assault with a dangerous weapon.  Currently, the defendant is being sentenced for yet another offense involving a weapon.

Finally, the defendant's prior sentences also demonstrate the extent to which the courts have shown the defendant a great deal of leniency and how the defendant has abused that leniency. For instance, the defendant was sentenced to 1 to 10 years of imprisonment for abduction, but was paroled after less than a year and granted final release 1 ½ years later. PSR ¶ 33. Similarly, the defendant was sentenced to 3 to 15 years imprisonment for burglary, but his sentence was suspended and he was placed on 3 years probation. PSR ¶ 34. The defendant responded to this leniency by absconding from probation supervision and becoming a fugitive. PSR ¶ 34. Likewise, the defendant's probation was revoked on four separate occasions relative to his 1992 conviction for battery, PSR ¶ 35, and on one occasion relative to his 1993 conviction for obstruction or resisting a public officer. PSR ¶ 36. Then, in 1995, the defendant was sentenced to 9 years of imprisonment for assault with a deadly weapon. Although he was paroled after serving almost 7 years, it took him less than 4 months to have his parole revoked for absconding from supervision. PSR ¶ 37. Over the following 2 years, the defendant absconded from parole 3 more times, resulting in additional parole revocations. PSR ¶ 37. Indeed, the defendant had absconded from his parole and was a wanted fugitive at the time he committed the instant offense.

Except for a few short months, the defendant has been incarcerated for most of the past twelve years: from 1995 through

2004, and then from 2005 through to today.  PSR ¶¶ 37, 71.  In March 2005, as a parole violator and wanted fugitive, he committed the instant offense, and he has been incarcerated since.  PSR ¶¶ 37, 71.  As he has been in custody for most of the past 12 years, his criminal history score, which fails to count 5 of his 7 adult convictions, therefore significantly under-represents his criminal history.

Based on this defendant's criminal history, a criminal history category of IV does not adequately account for the defendant's past conduct.  Not only has the defendant repeatedly abused the lenient treatment he has received, he has also demonstrated his penchant for recidivism, and for violence.  A criminal history category of IV substantially under-represents the defendant's criminal history and the likelihood that he will commit other crimes.  Accordingly, if this Court finds that ACCA, § 924(e)(2)(B), does not apply in the instant case, then the government requests that this Court depart upward from the recommended sentencing guideline range.

WHEREFORE, it is respectfully submitted that, for all of these reasons, this Court should find that the defendant's prior conviction for burglary in Ohio is a "violent felony" pursuant to ACCA, § 924(e)(2)(B).  In the alternative, this Court should grant the government's motion for an upward departure based on the defendant's criminal history.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


 /s/ Christine A. Sanner
CHRISTINE A. SANNER
Assistant U.S. Attorney
PA ID No. 85039