IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-24 Erie |
| ) | |
| BARRY WAYNE LEWIS ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the defendant, Barry Wayne Lewis, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files his Position With Respect To Sentencing Factors. In support thereof, counsel states:

Paragraph 27

Mr. Lewis objects to the presentence report's finding that he has three prior convictions for violent felonies pursuant to 18 U.S.C. § 924(e). Mr. Lewis denies that he has any convictions that meet § 924(e)'s definition of violent felony and submits that the Court cannot engage in the fact finding necessary to determine whether any of Mr. Lewis' prior convictions are "violent felonies" as defined by § 924(e). See Shepard v. United States, 125 S.Ct. 1254, 1263 (2005) (Thomas, J., concurring in part and concurring in the judgment).

Even if the Court finds that it can make factual findings as to whether Mr. Lewis has three prior violent felonies, Mr. Lewis' burglary conviction does not meet § 924(e)'s definition of violent felony. Section 924(e) defines violent felony as

> any crime punishable by imprisonment for a term exceeding one year . . . that--
>
>   (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
>   (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

physical injury to another.

The Supreme Court has found that § 924(e)'s use of the term "burglary" refers to "generic burglary" which the Court defined as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 2158 (1990). The Court recognized that some states had burglary statutes that covered entries into boats and cars, and held that a sentencing court trying to determine if a defendant had been convicted of a generic burglary could only look to the fact of conviction and the statutory definition of the prior offense. Id. at 602, 2160. The Court recognized a limited exception to this categorical approach when "the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and the that jury necessarily had to find an entry of a building to convict." Id.

In Shepard, the Court held that when a sentencing court is trying to determine if a burglary offense to which a defendant pled guilty to was a generic burglary under Taylor, the court could look only to a transcript of the change of plea or a written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea. Shepard, 125 S.Ct. at 1259-60. Shepard forbids the sentencing court from looking to police reports or other such documents when making its determination of whether a burglary meets Taylor's definition of generic burglary.

The burglary conviction discussed in detail in paragraph 34 was originally charged as an aggravated burglary in violation of Ohio Revised Code § 2911.11. The indictment charged that Mr. Lewis

>unlawfully by force, stealth, or deception, trespassed in an occupied structure as defined in Section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with the purpose to commit therein a theft offense as defined in Section 2913.01 of the Revised Code, or a felony, and the occupied structure involved in the permanent or temporary habitation of Albert Cross in which at the time any person was present or likely to be present.

This charge followed the statutory language of § 2911.11(A), which states in pertinent part:

>No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, whith pupose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
>
>(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
>(2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
>
>(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

The charge was amended from aggravated burglary to a charge of burglary in violation of Revised Code § 2911.12. That section states in pertinent part:

>(A) No person, by force, stealth, or deception, shall do any of the following:
>
>(1) Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit there in any theft offense or any felony;
>
>(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;
>
>(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.

A violation of division (A)(1) is an aggravated felony of the second degree. The term occupied structure is defined in Section 2909.01 of the Revised Code.

The 1993 version of Section 2909.01 of the Revised Code states that:

(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

Ohio's burglary statute obviously includes conduct outside "generic burglary" as defined by the Supreme Court in Taylor. Ohio's broad definition of "occupied structure" is similar to the Massachusetts burglary statute at issue in Shepard, and, therefore, Mr. Lewis' burglary can only be categorized as a generic burglary under § 924(e) if the indictment establishes that the occupied structure was a building, or there is a transcript of the plea which states that the occupied structure was a building or there is a plea agreement that so states. The Court may not look to police reports or any other sources of information to determine that the burglary involved the entry into a building. Since the indictment does not indicate that the occupied structure was a building, there is no transcript of the plea, and there was no written plea agreement, it cannot be established that Mr. Lewis' offense involved the entry into a building, and this conviction cannot be counted as a violent felony for purposes of § 924(e).

The addendum to the presentence report expresses agreement with the preceding argument but then cites United States v. Lane, 909 F.2d 895 (6th Cir. 1990), to support a finding that Mr.

Lewis' burglary conviction qualifies as a violent felony under § 924(e)'s "otherwise" clause. Fortunately for Mr. Lewis, Lane is not controlling authority and its holding is demonstrably wrong.

Lane bases its holding that an Ohio burglary conviction qualifies as a violent felony under the "otherwise" prong on the assertion that "[a]n occupied structure" is defined broadly to include places in which a person is actually or likely to be present. *See* Ohio Rev.CodeAnn. § 2909.01." Lane, 909 F.2d at 903. A review of Ohio's aggravated burglary statute, burglary statute, § 2909.01, and Ohio law interpreting these statutes, reveals the error of this assertion.

Ohio's aggravated burglary statute, found at R.C. § 2911.11(A), states as follows:

No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, whith pupose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;

(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

Ohio's burglary statue, found at R.C. §2911.12, states:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit there in any theft offense or any felony;

(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;

(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.

5

> Ohio defines "occupied structure" in R.C. § 2909.01 which states that:
>
> (C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and **whether or not any person is actually present.**
>
> (2) At the time, it is occupied as the permanent or temporary habitation of any person, **whether or not any person is actually present.**
>
> (3) At the time, it is specially adapted for the overnight accommodation of any person, **whether or not any person is actually present.**
>
> (4) At the time, any person is present or likely to be present in it.

The Ohio Supreme Court has held that the definitions of occupied structure contained in § 2909.01 must be read disjunctively. State v. Wilson, 388 N.E.2d 745, 749 (Ohio 1979). This reading of § 2909.01 allowed the Ohio Supreme Court to reject the defendant's equal protection challenge to the constitutionality of the aggravated burglary statue in which the defendant claimed the elements of aggravated burglary and burglary where identical and therefore he could only be sentenced to the maximum sentence set for burglary. Reading the definitions of § 2909.01 disjunctively, the Ohio Supreme Court explained the difference between the elements of aggravated burglary and burglary.

> Applying the definitions separately, the state, in a prosecution pursuant to R.C. 2911.12(A), burglary, would have to prove the following elements: (1) that the person trespassed by force, stealth, or deception; (2) in on occupied structure as defined in R.C. 2909.01 or in a separately occupied portion thereof; and (3) with the purpose to commit therein a theft offense as defined in R.C. 2913.01 or any felony. In proving the second element of the offense, that the thing trespassed upon was an "occupied structure," the state would have to prove that the structure comes within One of the four definitions set out in R.C. 2909.01(A) through (D).

6

> In a prosecution for a violation of R.C. 2911.11, aggravated burglary, the state must prove the same elements as the crime of burglary with the addition of one of three aggravating circumstances . . . While R.C. 2911.11(A)(3), the third aggravating circumstance, is a combination of two of the definitions of "occupied structure" found in R.C. 2909.01(B) and (D), R.C. 2911.11 still requires that the state prove an additional element in order to convict a person of aggravated burglary instead of simple burglary.  In proving burglary the state need only prove that the structure was a permanent or temporary habitation, or a structure in which any person is present or is likely to be present.  It need not prove both.  In aggravated burglary, under R.C. 2911.11(A)(3), the state must shoulder the additional burden of proving both.  That is to say, in an aggravated burglary case, the structure must be one that was both the permanent or temporary habitation of any person And in which at the time any person was present or likely to be present.  If the state can prove only that the building was occupied as a permanent or temporary habitation Or that someone was present or likely to be present, a conviction for burglary, but not aggravated burglary, will stand.
>
> Proof of one definition of R.C. 2909.01 does not prove the other, nor does proof of one prove facts sufficient to sustain a conviction for aggravated burglary under R.C. 2911.11(A)(3).  A structure can be one that was occupied as a permanent or temporary habitation without being one under R.C. 2909.01(D), where at the time anyone is present or likely to be present.  The converse is also true.  R.C. 2911.11, aggravated burglary, carries a higher penalty because it is designed to protect homes where the danger of harm is greatest.  The aggravated burglary statute, by its own terms, requires two elements of proof, permanent or temporary habitation and presence or likelihood of presence.  This additional element of proof placed upon the state as part of its burden of proof clearly distinguishes the crime from simple burglary.

Id. at 749-750.  The Ohio Supreme Court then rejected the contention that "once the state proves that a permanent or temporary habitation has been burglarized, it is presumed that a person is likely to be present."  Id.  There is no such presumption, and the state must prove the actual or likely presence of a person to prove aggravated burglary.

The Ohio Supreme Court's extended discussion concerning the distinction between aggravated burglary and burglary shows the fallacy of Lane's claim that burglary in Ohio presents a serious potential risk of physical injury to another because the burglary statute requires the

actual or likely presence of a person in the burglarized structure.  Lane, 909 F.2d at 903.  The Ohio Supreme Court made it clear that burglary does not require the actual or likely presence of a person in the burglarized structure.

The Ohio Supreme Court's discussion also explains the import of the amendment of the indictment against Mr. Lewis from aggravated burglary to a charge of burglary.  To convict Mr. Lewis of the aggravated burglary charge, the state would have had to prove that the "occupied structure" (which could have been a house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof) was the permanent or temporary habitation of Adelbert Cross **and** that at the time Mr. Lewis entered the occupied structure any person was present or likely to be present.  After the indictment was amended, the state no longer had to prove that at the time of the entry into the occupied structure any person was present or likely to be present.  And, as the Ohio Supreme Court made clear in Wilson, there is no presumption that any person was present or likely to be present.

The government's Position With Respect to Sentencing Factors claims that the indictment's allegation that "the occupied structure involved is the permanent or temporary habitation of Adelbert Cross" establishes that the occupied structure was a building and therefore Mr. Lewis' burglary conviction falls within Taylor's generic burglary definition.  That is false.  The language of the indictment tracks the language of § 2909.01(b).  Based upon that language, the occupied structure could have been a boat, an aircraft, a railroad car, truck, trailer, or other structure, vehicle or shelter that Adelbert Cross was using as his permanent or temporary habitation.  There is no way to know from the indictment which option applied.  The government's reliance upon State v. Veal, 355 N.E.2d 521 (Ohio App. 1975) is misplaced, as it

8

was decided by the Ohio Appellate Court before the Ohio Supreme Court decided <u>Wilson</u>. Furthermore, even under <u>Veal</u> if a person was temporarily living in their car, the car could be an "occupied structure" because the car would be "occupied as the permanent or temporary habitation . . . whether or not any person is actually present." R.C. § 2909.01(B). The use of the word "habitation" does not make the "occupied structure" a building. Finally, the government's claim that <u>United States v. Mahon</u>, 444 F.3d 530 (6th Cir. 2006) stands for the proposition that Ohio's burglary statute was both a generic burglary under <u>Taylor</u> and a violent felony under the Armed Career Criminal Act is wrong. <u>Mahon</u> dealt with Ohio's breaking and entering statute, R.C. § 2911.13.

     Mr. Lewis's Ohio burglary conviction is not a generic burglary under <u>Taylor</u> nor is it a crime of violence under the "otherwise" prong of § 924(e)(2)(B)(ii). Looking solely at the indictment this Court cannot determine whether Mr. Lewis entered a building or a car or a boat or an airplane or a tent. Furthermore, it was not an element of the offense that anyone be present at the time of entry or that it be likely that anyone was present. For all the Court knows from the indictment, Mr. Lewis entered a car that Adelbert Cross had been sleeping in at night as his temporary habitation at a time when no one was in or around the car. Or, Mr. Lewis may have entered a boat Adelbert Cross had been sleeping on at night at some point during the day when no one was around. Given the breadth of Ohio's definition of "occupied structure," and the Ohio Supreme Court's interpretation of the elements of burglary, this Court cannot find that Mr. Lewis conviction involved conduct that presents a serious potential risk of physical injury to another. Accordingly, Mr. Lewis is not an Armed Career Criminal. Mr. Lewis' total offense level should be 17 and his criminal history category should be IV which results in an advisory guideline

imprisonment range of 37-46 months.

## There Is No Basis For An Upward Departure

The government argues for an upward departure pursuant to U.S.S.G. § 4A1.3, claiming that a criminal history category IV substantially under-represents the seriousness of Mr. Lewis' criminal history or the likelihood that he will commit other crimes. The government bases its motion on three factors: (1) that under the guidelines some of Mr. Lewis' prior convictions are too old to receive any criminal history points; (2) that some of Mr. Lewis' prior convictions involved weapons; and (3) that, in the government's opinion, Mr. Lewis received sentences in the past that were too lenient. None of these factors, either alone or in combination, support an upward departure.

First, the fact that the guidelines do not assign criminal history points to some of Mr. Lewis' convictions due to their age is nothing out of the ordinary. At bottom, the government's argument is simply a disagreement with the guideline's policy judgment regarding when a conviction becomes too old to be counted. Section 4A1.3(a)(2) provides five examples of information that may support an upward departure under that section. None of the five examples include the fact that a defendant's priors are too old to count under the guidelines.

Second, none of Mr. Lewis' prior convictions justify an upward departure based on the presence of a weapon. The first conviction the government points to is a conviction for carrying a concealed weapon which occurred over 19 years ago. The presentence report contains no details concerning the offense so the Court has no idea what type of weapon was involved. Based on the sentence of a $25 fine, it is reasonable to conclude that it was some minor weapon which was not used in any way against anyone else.

The second conviction did not even involve a weapon. Mr. Lewis pled guilty to aggravated menacing. The presentence report again contains no details of the offense. The government, in violation of almost every basic constitutional right enjoyed by citizens of this country, claims that Mr. Lewis had a weapon because he had been charged with the offense of Felonious Assault With a Gun. Of course, citizens of this country are presumed innocent of any charges brought against them, a fact recognized by § 4A1.3 which specifically states that "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement."

The third conviction relied upon by the government, Mr. Lewis' California conviction for assault with a deadly weapon, has already been taken into account by the guidelines both in establishing Mr. Lewis' criminal history category **and** in setting his offense level. Paragraph 18 of the presentence report explains that Mr. Lewis' base offense level under § 2K2.1 is 20 because of his California conviction. Without that conviction, Mr. Lewis' offense level would have been 14. U.S.S.G. § 2K2.1(a)(6). Without this 6-level increase in his base offense level, Mr. Lewis' advisory guideline imprisonment range would have been 21-27 months.

The government's final argument in support of an upward departure amounts to nothing more than a claim that all the courts who have previously sentenced Mr. Lewis were too lenient. It is not a federal prosecutor's role to second-guess the sentences imposed by state court judges. Additionally, the sentences in the abduction, burglary, and battery cases were imposed too long ago to count towards Mr. Lewis' criminal history category, so this is really nothing more than a regurgitation of the first argument in support of an upward departure. Finally, Mr. Lewis is at a loss to see how serving 7 years in prison for his California assault convictions establishes that he

was treated too leniently.

There is nothing so extraordinary about Mr. Lewis' criminal history to justify an upward departure from criminal history category IV. The government has failed to establish that criminal history category IV under-represents the seriousness of Mr. Lewis' criminal history let alone that it **substantially** does so.

WHEREFORE, the defendant, Barry Wayne Lewis, respectfully asks this Honorable Court to conclude that he does not qualify as an Armed Career Criminal and impose a sentence of 37 months of incarceration.

Respectfully submitted,

**/s/Thomas W. Patton**
Thomas W. Patton
Assistant Federal Public Defender
Attorney I.D. No. 88653