IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
         v.             )    CRIMINAL NO. 05-24 ERIE
                            )
BARRY WAYNE LEWIS        )

SENTENCING

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, August 9, 2007.

APPEARANCES:

        CHRISTINE A. SANNER, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public
        Defender, appearing on behalf of the Defendant.

        Ronald J. Bench, RMR - Official Court Reporter

2

P R O C E E D I N G S

     (Whereupon, the proceedings began at 10:26 a.m., on Friday, August 9, 2007, in Courtroom C.)


     THE COURT:  This is the time that we have set for sentencing in the case of United States v. Barry Wayne Lewis. And we do have a number of objections to take up.  Mr. Patton. Before we get rolling on the real substantive matter, which is the armed career offender classification, there was an objection to, I think the original presentence calculation had only afforded two, rather than three points, for acceptance of responsibility, was that it?

     MR. PATTON:  I think so, your Honor.  But there was a plea agreement where the government agreed to three levels.

     THE COURT:  Let me get this on the record, then we can get rolling.  Let me indicate on the record what the -- recognizing that there is a dispute concerning career offender status, let me indicate on the record what the total offense level and criminal history category would be, assuming that career offender status applies, and then we can take up the issue as to its applicability.

     The total offense level is a 30.  With a criminal history category of IV.  Statutory provision as to custody not less than 15 years imprisonment.  The guideline 180.  Statutory

3

1    provision as to probation ineligible.  Also ineligible under

2    the guidelines.  Statutory provision as to supervised release

3    not more than five years.  Guideline provisions at least three

4    but not more than five years.  Statutory provision as to a fine

5    $250,000.  Guidelines $15,000 to $150,000.  Restitution is

6    inapplicable under both the statute and the guidelines.  And a

7    special assessment of $100 applies with respect to both.

8              Recognizing you're challenging the career offender

9    status, there is no objection to the accuracy of those

10   calculations or guidelines in the event that it applies?

11             MR. PATTON:  Yes, it's armed career criminal.

12             THE COURT:  I meant to say armed career criminal.

13   All right.  Mr. Patton.

14             MR. PATTON:  Your Honor, first of all, just to

15   preserve the argument, we want to argue that the court should

16   not be allowed to make factual findings that are necessary to

17   find that Mr. Lewis's prior convictions meet the Armed Career

18   Criminal Act's definition of a crime of violence.

19             THE COURT:  You're not waiving that.

20             MR. PATTON:  Your Honor, the dispute in this case

21   centers around the conviction for burglary that's in paragraph

22   34.   In the objections that we sent to Mr. Lowers, we objected,

23   number one, to the presentence report's description, factual

24   description of the offense, saying that we are not admitting to

25   those facts and object to those facts.  And, indeed, in the

4

1   response, in the addendum identified those facts come from

2   police reports.  And as the Supreme Court has made clear in

3   Shepard, your Honor cannot look to police reports in deciding

4   whether or not a conviction qualifies as a crime of violence

5   under the Armed Career Criminal Act.  The burglary conviction

6   is not a crime of violence under the Armed Career Criminal Act.

7   First off, the Ohio burglary statute is much broader than the

8   generic burglary as defined by the United States Supreme Court.

9           THE COURT:  Could you hold your thought for one

10  second.  Okay.

11          MR. PATTON:  Your Honor, in Taylor v. United States,

12  the Supreme Court found that, as used in the Armed Career

13  Criminal Act, the term burglary refers to generic burglary,

14  which the Supreme Court defined as an "unlawful or unprivileged

15  entry into, or remaining in, a building or structure, with the

16  intent to commit a crime."  The Ohio burglary statute is much

17  broader than generic burglary.  Because an Ohio burglary

18  addresses entry into an occupied structure.  And an occupied

19  structure is defined in Section 2909.01 of the Ohio Revised

20  Code as follows:

21          "Occupied structure means any house, building,

22  outbuilding, watercraft, aircraft, railroad car, truck,

23  trailer, tent, or other structure, vehicle, or shelter, or any

24  portion thereof, to which any of the following applies:"

25          Then it has a list of four different ways that any

1    of those items can be an occupied structure.

2           "(1) It is maintained as a permanent or temporary

3    dwelling, even though it is temporarily unoccupied and whether

4    or not any person is actually present.

5           (2) At the time, it is occupied as the permanent or

6    temporary habitation of any person, whether or not any person

7    is actually present.

8           (3) At the time, it is specially adapted for the

9    overnight accommodation of any person, whether or not any

10   person is actually present.

11          (4) At the time, any person is present or likely to

12   be present in it," it can be an occupied structure.

13          Now, under those definitions, if someone is living

14   in their car and is, therefore, the car is occupied as the

15   temporary or permanent habitation of a person, a car is an

16   occupied structure.  If a boat is being used as a permanent or

17   temporary habitation, it meets the definition of occupied

18   structure.  And there's no requirement that any person actually

19   be present at the time of the offense.  So, clearly, under the

20   definition of occupied structure, the Ohio burglary statute is

21   broader than generic burglary.

22          Now, the government's papers seems to put a lot of

23   emphasis on the use of the word habitation, and trying to argue

24   that habitation must mean a structure.  But Section 2909.01

25   just shows that to be completely wrong.  Because occupied

1    structure can be a house, a watercraft, an aircraft, a railroad

2    car, a truck, a trailer, a tent, a vehicle, or shelter.  If any

3    one of those is occupied as the permanent or temporary

4    habitation of a person.  So habitation does not equal building.

5            Now, originally Mr. Lewis was charged with

6    aggravated burglary.  And the aggravated burglary charge that

7    Mr. Lewis had trespassed in an occupied structure as defined in

8    Section 2909.01 of the Revised Code, or in a separately secured

9    or separately occupied portion thereof, with the purpose to

10    commit therein a theft offense, as defined in Section 2913.01

11    of the Revised Code, or a felony, and the occupied structure

12    involved in the permanent or temporary habitation of Adelbert

13    Cross in which at the time any person was present or likely to

14    be present.  That's the original charge.

15            THE COURT:  Amended, per the court docket, to just

16    burglary?

17            MR. PATTON:  Correct.  Even the charge as originally

18    put out in the aggravated burglary charge, does not identify

19    what the occupied structure was.  Whether the occupied

20    structure was a building or whether it was a watercraft,

21    whether it was an airplane, whether it was a vehicle, or a

22    railroad car or a tent.  The term "occupied structure" is a

23    term of art under -- actually it's a defined term --

24            THE COURT:  Statutory term.

25            MR. PATTON:  Under Ohio law.  And it is what

1    governs.  One way an item can be an occupied structure is if it

2    is occupied as the permanent or temporary habitation of a

3    person.  But simply because it is a temporary or permanent

4    habitation of a person, does not mean it's a building.  It can

5    be any of those items that are listed in the introductory

6    paragraph to subsection (C) of 2909.01.

7            Now, when the burglary statute, excuse me, the

8    aggravated burglary charge was amended to burglary, it

9    substantially altered the elements that the state was required

10   to prove and the elements that Mr. Lewis would have had to

11   admitted to, to plead guilty.  The Ohio Supreme Court in

12   State v. Wilson, which is cited in our papers, explained in

13   detail the difference under Ohio law between an aggravated

14   burglary and a burglary.

15           THE COURT:  Not to put a finer point on it but to

16   put that Wilson case in context, the court in Wilson, which is

17   the Ohio Supreme Court case, correct?

18           MR. PATTON:  That is correct.

19           THE COURT:  Was called upon to determine whether

20   there was an equal protection problem with respect to the

21   aggravated burglary statute and the regular burglary statute,

22   is that right?

23           MR. PATTON:  That's correct.  The defendant took the

24   position that there is no difference between the two statutes.

25   They have the same elements and require the same proof.  And

```
 1    since they require the same proof, you can't sentence me to the
 2    enhanced penalties under the aggravated burglary statute, you
 3    can only sentence me to the penalties under the burglary
 4    statute.  So the argument by the defendant was there's no
 5    difference between aggravated burglary and burglary under Ohio
 6    law.  And so the Ohio Supreme Court had to decide whether or
 7    not there was in fact a difference under Ohio law between
 8    aggravated burglary and burglary.  And the Ohio Supreme Court
 9    said that there in fact was a difference.  The difference is
10    that under a regular burglary charge, to meet the definition of
11    occupied structure, the state only has to prove one of the four
12    subsections under Section (C) of 2909.01.  If any one of those
13    present --
14                THE COURT:  You said for aggravated burglary?
15                MR. PATTON:  For burglary.  For burglary, if any one
16    of those is proved and you show the unlawful breaking into with
17    the intent to commit the offense --
18                THE COURT:  Because they're in the disjunctive?
19                MR. PATTON:  Correct.  They said for the aggravated
20    burglary, you have to show a burglary, but there has to be one
21    of three aggravators.  One of the aggravators is that the
22    offender inflicts, or attempts or threatens to inflict physical
23    harm on another.  The second one is if the offender has a
24    deadly weapon or dangerous ordnance as defined under Ohio law.
25    Or the occupied structure involved is the permanent or
```

1    temporary habitation of any person, in which at the time any

2    person is present or likely to be present.  Now, in the Wilson

3    case, it was that last aggravator that the state had charged

4    the defendant with.  And saying that it was aggravated burglary

5    because the occupied structure was a permanent or temporary

6    habitation of a person, in which at the time any person was

7    present or likely to be present.  And what the Ohio Supreme

8    Court said is that that third aggravator is a combination of

9    the second and fourth subsection of 2909.01.  But as the

10   aggravator is written in the aggravated burglary statute, it

11   requires proof of both.  You have to prove both that the

12   occupied structure is the permanent or temporary habitation of

13   any person; and at the time any person is present or likely to

14   be present.  That's what's required to be proved for aggravated

15   burglary.

16            And to distinguish between them, the Wilson court

17   stated that proof of one definition of Revised Code 2909.01,

18   does not prove the other.  Nor does proof of one prove facts

19   sufficient to sustain a conviction for aggravated burglary

20   under Revised Code 2911.11(A)(3).  A structure can be one that

21   was occupied as a permanent or temporary habitation without

22   being one under Revised Code 2909.01(D), where at the time any

23   one is present or likely to be present.  So it can be occupied

24   structure even if nobody is present or likely to be present.

25   So it can be an occupied structure for burglary purposes just

1    if it's the temporary or permanent habitation of someone.  And

2    the state does not have to prove that any one is present or

3    likely to be present.  For aggravated burglary --

4            THE COURT:  The presence or likely presence is

5    required?

6            MR. PATTON:  Correct.

7            THE COURT:  All right.

8            MR. PATTON:  Your Honor, that portion of the <u>Wilson</u>

9    opinion directly conflicts with the Sixth Circuit's <u>Lane</u> case,

10   because <u>Lane</u> actually makes the statement that the Ohio

11   burglary statute, just burglary, presents a serious potential

12   risk of physical injury to another because the burglary statute

13   requires the actual or likely presence of a person in the

14   burglarized structure.

15           THE COURT:  Say that again, you're quoting from the

16   case?

17           MR. PATTON:  Yes.  Now, understand <u>Lane</u> had already

18   determined that the Ohio burglary statute was broader than

19   generic burglary, until it said under <u>Taylor</u> it's not a

20   burglary.

21           THE COURT:  All right.

22           MR. PATTON:  They were trying to look at the

23   otherwise clause of the Armed Career Criminal Act's definition

24   of --

25           THE COURT:  Otherwise presents a risk, etc.?

1          MR. PATTON:  Correct.

2          THE COURT:  Right.

3          MR. PATTON:  Lane says "thus, burglary in Ohio

4   presents a serious potential risk of physical injury to

5   another, because the burglary statute requires the actual or

6   likely presence of a person in the burglarized structure."

7   And that is from Lane, United States v. Lane, 909 F.2d, 895 at

8   903.  But the Ohio Supreme Court in Wilson specifically held

9   "a structure can be one that was occupied as a permanent or

10  temporary habitation without being one under Revised Code

11  2909.01(D), where at the time anyone is present or likely to be

12  present."  That is State v. Wilson, 388 N.E.2d 745 at 750.

13  That's the Ohio Supreme Court (1979).

14          THE COURT:  So you say there's a tension between

15  Lane and Wilson to the extent it's the Ohio Supreme Court

16  interpreting the Ohio statute trumps Lane?

17          MR. PATTON:  Yes.  Lane just got it wrong.  Because

18  Wilson, the Wilson court specifically directly addressed the

19  issue and said that for burglary, a temporary or permanent

20  habitation can be -- the state can't prove that it was an

21  occupied structure by proving only that was the temporary or

22  permanent habitation of a person.  And they don't have to

23  prove, in fact, it's not even relevant, as to whether or not a

24  person is present or likely to be present.  And that the Wilson

25  court had to make that determination because the whole point of

1    the defendant in <u>Wilson</u>, the whole point of his argument was

2    that aggravated burglary and burglary was identical.  So the

3    <u>Wilson</u> court had to decide whether there was a difference.  The

4    difference they found was that burglary didn't require proof

5    that a person was present or likely to be present, but

6    aggravated burglary did require that.  They also made it very

7    clear, the Ohio Supreme Court said that proof that an occupied

8    structure is a permanent or temporary habitation of someone,

9    does not equal proof that a person is present or likely to be

10   present.  That is a separate element under aggravated burglary

11   that would have to be proven.  So you cannot assume simply

12   because the occupied structure that was entered was the

13   temporary or the permanent habitation of an individual, that an

14   individual was present or even likely to be present.

15          Based on that, your Honor, you cannot find that the

16   burglary conviction is a crime of violence under the otherwise

17   clause.  Because based just on the elements of what the state

18   has to prove, it is not otherwise likely to cause a serious

19   risk of injury to anyone.  The burglary does not otherwise

20   involve conduct that presents a serious potential risk of

21   physical injury to another.

22          THE COURT:  You're reading from the catch-all

23   clause?

24          MR. PATTON:  Correct, that's the catch-all phrase of

25   924(e).  That it's an offense that otherwise involves conduct

1    that presents a serious potential risk of physical injury to

2    another.  But as defined by the Ohio Supreme Court, a burglary

3    conviction does not require any proof that any person is

4    present or likely to be present at the time the offense

5    occurred.  And given the broad definition of occupied

6    structure, that it covers watercraft, aircraft, railroad cars,

7    trucks, a tent, a vehicle, then solely looking at the elements

8    of the offense, there is no way the court can make any finding

9    that this offense, the burglary Mr. Lewis was convicted of,

10   presented a serious potential risk of physical injury to

11   another.  Because once the aggravated burglary got amended to

12   burglary, the part in the Indictment that charged that the

13   occupied structure or, excuse me, that Mr. Cross was either

14   present, or I guess more accurate to say any person was present

15   or likely to be present, the state didn't have to prove that,

16   that dropped off as an element of the offense.  Indeed, if he

17   had actually admitted that, it wouldn't have been a plea to

18   burglary, it would have been a plea to aggravated burglary.

19   Now, the government in a footnote in their papers has a

20   discussion as to whether or not it's legal for an Indictment to

21   later be amended by the court.  Whether that's true or not

22   true, there isn't any dispute that actually what happened is it

23   was amended, whether lawful or not, it was amended and he pled

24   to burglary.  Once that amendment was made, the state did not

25   have to prove anyone was present or likely to be present.  And

1    without that, without any person being present or likely to be

2    present, for all you know, based on the elements of the

3    offense, this was breaking into a car that somebody was

4    sleeping in.  Because under the definition of occupied

5    structure, if I'm sleeping in my car, that's my at least

6    temporary habitation.  And if I leave it parked and go

7    somewhere and somebody breaks into it, that could be a burglary

8    under Ohio law.

9            THE COURT:  But not a generic burglary?

10           MR. PATTON:  Well, it's burglary under Ohio law, but

11   it's not generic burglary as that term is defined by Taylor.

12           THE COURT:  That's what I mean.

13           MR. PATTON:  And it does not involve conduct that

14   presents a serious potential risk of injury to another.

15           THE COURT:  Tell me again and I understand your

16   position on generic burglary, but since I can't go outside the

17   documents, I'm limited to what I can look at, under Taylor and

18   its progeny, you don't have generic burglary here, at least one

19   that you can legitimately find.  Tell me secondarily, though,

20   why again, if you would, why the conduct here doesn't satisfy

21   the catch-all prong?

22           MR. PATTON:  First of all, you have to understand

23   that you cannot look at the description of the offense listed

24   in the presentence report and say well, geez, it says he went

25   into an apartment -- and went into the apartment while the guy

1    was in the hospital.  You can look at that.  <u>Shepard</u> says that

2    you can't look at it, that's coming from a police report, we

3    don't know if it's accurate or not accurate.

4              THE COURT:  To put a finer point on it, I of course

5    can look at it and did, but it doesn't get cranked into the

6    calculous?

7              MR. PATTON:  Correct.  <u>Shepard</u> says all you can look

8    at is a transcript of the plea or some kind of written plea

9    agreement where the defendant has acknowledged the accuracy of

10   the facts put in there.

11             THE COURT:  All right.

12             MR. PATTON:  So what you have to do in trying to

13   decide categorically does the offense prevent conduct that

14   presents a serious potential risk of physical injury to

15   another.  You have to look at the elements of the Ohio burglary

16   and say under those elements categorically does it have to

17   involve conduct that presents a serious potential risk of

18   physical injury to another.  But you can't do that because

19   under the Ohio burglary, there is no proof that anyone was

20   present or even likely to be present.  And you can be talking

21   about breaking into a car or a boat or a trailer or an airplane

22   or a railroad car or a tent.  All of those can be included in

23   occupied structure.  And if the offense does not require any,

24   the presence or even likely presence of any person, then there

25   is no conduct that presents a serious potential risk of

16

1    physical injury.  Otherwise, if you were to hold otherwise,

2    you're basically saying any time somebody breaks into a car,

3    there's a serious potential risk of injury.  Or anytime

4    somebody breaks into a boat.  Or, I guess it would be rare,

5    breaking into an aircraft.  Or into a tent, or into a railroad

6    car.  And so the only argument that has been presented to you

7    by the probation office and the government, as far as the

8    otherwise clause, is the <u>Lane</u> case from the Sixth Circuit.

9    But <u>Lane</u> is based on, its holding is based on an incorrect view

10   of Ohio law.

11           THE COURT:  And <u>Wilson</u> preceded <u>Lane</u>, did it not?

12           MR. PATTON:  Yes.  In <u>Lane</u> they just blew it.  Maybe

13   the issue wasn't presented to the Sixth Circuit very well, I

14   mean I can't explain it.  But <u>Lane</u> says the burglary statute

15   requires the actual or likely presence of a person in the

16   burglarized structure.  And <u>Wilson</u> cannot any more clearly

17   state that that is not an element of burglary.  And in this

18   case, two things.  Number one, the Sixth Circuit obviously is

19   not binding on you.  Number two, state supreme courts are the

20   final arbiter of the meaning of state law.  And the Ohio

21   Supreme Court in an opinion, where the sole issue was what's

22   the difference between aggravated burglary and burglary,

23   specifically found that the difference is an aggravated

24   burglary they have to prove the presence of a person or the

25   likely presence of a person.  In burglary they do not have to

1    prove that.  And they took the next step and said even if the

2    state proves temporary or permanent habitation, that fact does

3    not establish presence or even likely presence.

4             THE COURT:  All right, I have your point.  Let me

5    hear from Ms. Sanner, then if you have something else to say,

6    you can come up.

7             MS. SANNER:  The question before this court is

8    whether the defendant's prior conviction for burglary in Ohio

9    is a violent felony under 924(e).  It is not what the

10   difference is in Ohio between burglary and aggravated burglary.

11   This court in its decision-making is governed by Shepard,

12   Taylor, and the Third Circuit case of Bennett, which is cited

13   in the brief.  I think it's helpful in the first instance, and

14   I'm going to approach the court, these were attached as

15   exhibits, I think it's helpful to look at.  I've handed to the

16   court a copy of the true bill of the Indictment in this case.

17   And also the Ohio statute for aggravated burglary.

18            THE COURT:  All right.

19            MS. SANNER:  I'd ask the court to turn in the

20   statute to aggravated burglary, there is an Amendment Note

21   1995, which talks about the statute under which this defendant

22   was indicted in 1990.

23            THE COURT:  I'm sorry, I'm looking at Amendment Note

24   1995?

25            MS. SANNER:  Yes.  And it talks about the section

1   previously read, then it goes on to state the language of

2   aggravated burglary that was in effect at the time the

3   defendant was indicted.  And if you compare the language, hold

4   them side-by-side of the true bill with this language, you will

5   see that both of them read along no person, by force, stealth,

6   or deception, shall trespass in an occupied structure, as

7   defined in Section 2909.01 of the Revised Code, or in a

8   separately secured or separately occupied portion thereof, with

9   purpose to commit therein any theft offense as defined in

10  Section 2913.01 of the Revised Code, or any felony, when any of

11  the following apply.  Tracking the language in the Indictment,

12  where the Indictment says as defined in Section 2913 of the

13  Revised Code, or a felony, there's an and there in the

14  Indictment.  In this case the Indictment reads "and the

15  occupied structure involved is the present or temporary

16  habitation of Adelbert Cross in which at the time any person

17  was present or likely to be present."  It is that and language

18  and the occupied structure involved is the permanent or

19  temporary habitation of Adelbert Cross, that narrows the charge

20  to generic limits.

21          THE COURT:  When you say to generic limits, do you

22  mean to generic burglary?

23          MS. SANNER:  Generic burglary pursuant to Taylor.

24  Taylor talks about generic burglary being the unlawful or

25  unprivileged entry into or remaining in a building or other

1    structure with intent to commit a crime.  Here the Indictment

2    clearly states that the building or other structure was the

3    occupied structure, that being the permanent or temporary

4    habitation of Adelbert Cross.  If the court goes on, in the

5    aggravated burglary statute and reads down a little bit,

6    Legislative Service Commission, 1973.  It states --

7              THE COURT:  Hang on a second.

8              MS. SANNER:  In the aggravated burglary statute of

9    Ohio --

10             THE COURT:  Yes.

11             MS. SANNER:  There is a notation that says

12   Legislative Service Commission, 1973.

13             THE COURT:  Yes.

14             MS. SANNER:  That section states "this section

15   defines the most serious of the three breaking and entering

16   offenses contained in the new code."  It goes down several

17   lines, "aggravated burglary is trespass in an occupied

18   structure, accomplished by force, stealth, or deception, for

19   the purpose of committing a felony or stealing, when the

20   offender is armed."  That is subsection (A)(3).  Or attempts

21   threatened harm, that is subsection (A)(1), to anyone.  Or when

22   the structure involved is someone's home, that's subsection

23   (A)(2).  The legislative history makes clear that habitation,

24   in the context of this, was intended to mean someone's home.

25   The habitation of Adelbert Cross, was Adelbert Cross's home.

1    That is what he was charged with in the Indictment in this

2    case.  There was no allegation in the Indictment that he

3    threatened physical harm.  There is no allegation that he had a

4    deadly weapon on him.  There is, however, pursuant to

5    subsection (A)(3), the allegation that the occupied structure

6    involved is the permanent or temporary habitation of any person

7    in which at the time any person is present or likely to be

8    present.  That is Adelbert Cross's home.  Now, the Indictment

9    in this case was amended.  But all that the amendment in this

10   case did was strike the language aggravated.  That's all the

11   Indictment, that's all the amendment could do.  And I don't

12   think the defendant is really disputing that, I cited a number

13   of cases in the brief that by striking just the caption, you do

14   not change the substantive language in the Indictment.  The

15   court didn't have the authority to do that, and it didn't in

16   fact do that.  The amendment to the Indictment didn't change

17   more than that, it struck the language aggravated.  It

18   continued to charge the defendant with burglarizing,

19   specifically, the unoccupied structure that was the temporary

20   or permanent habitation of Adelbert Cross, that is Adelbert

21   Cross's home.  I would also direct the court to Bennett, which

22   is a case again cited in the briefs that is from this circuit,

23   the Third Circuit.  In Bennett, the Third Circuit was looking

24   at a Pennsylvania statute, which, like the Ohio statute before

25   you, was broad.  And the court instructed that this court

1  should look to the Indictment, etc., in determining whether the
2  charged Indictment met generic limits in Taylor.  In Bennett
3  the three prior burglaries were determined because the
4  defendant's prior counsel volunteered information to the court
5  that he had previously broke a window in a photomat booth,
6  burgled a variety store, and threw a brick at a bakery window.
7  The court found that based on these representations of counsel,
8  that the charges met the generic limits set forth in Taylor.
9  The government isn't asking you to do anything different, it's
10  exactly what Shepard or Taylor or Bennett would have the court
11  do, which is you look precisely at the language of the
12  Indictment.  And the government's primary position is that
13  specifically charged in this case was the burglary of Adelbert
14  Cross's home, his habitation, as that's defined by Ohio law.
15  Wilson is not on point, it's an equal protection case.  And
16  yes, there is a difference between aggravated burglary and
17  burglary.  The question again before this court is was the
18  conviction in Ohio a violent felony pursuant to 924(e).  Not is
19  there a difference between aggravated burglary and burglary.
20  Yes, there is.
21          The government's second position, which is aside
22  from the position that the Indictment clearly limited to
23  generic limits, the specific building or structure that was
24  burgled, is that under Lane, the defendant's conduct fits into
25  the otherwise clause of 924(e).  Shall I move on to that

1    argument?

2              THE COURT:  Yes.

3              MS. SANNER:   Lane dealt with a prior conviction

4    being an attempted burglary.  And the court in Lane held, the

5    Sixth Circuit, that under the Ohio burglary statute, burglary

6    is broader than the generic limits of Taylor.   That court in

7    Lane found that it didn't have enough information based on any

8    Indictment or anything else before it, so that it could

9    determine whether Lane either burgled a building or a structure

10   pursuant to Shepard and Taylor.  However, the court said that

11   this wasn't the only way that 924(e) applied and that, in fact,

12   Ohio burglary presents serious risks of injury.  And,

13   therefore, burglary is a violent felony in Ohio under the

14   otherwise clause.  And it did talk about the occupied structure

15   aspect, and that's because if you look at the Ohio burglary

16   statute or the attempted burglary, I'm sorry, the aggravated

17   burglary statute, they both deal with occupied structure.

18   Under the burglary statute, each of the four subsections that

19   defines burglary refers specifically to occupied structures or

20   permanent or temporary habitations in which a person is present

21   or likely to be present.  All of those are occupied and that's

22   what Lane was concerned with.  It wasn't concerned with whether

23   there was actually someone present at the moment, but whether

24   or not these are the types of buildings or structures in which

25   a person is likely to be present.  Quoting from Lane, the court

1    said "because Ohio's burglary statute includes places other

2    than buildings, it is broader than the Supreme Court's generic

3    definition of burglary."  Therefore, the court goes on, "it is

4    necessary to determine the Indictment, to determine if language

5    charged only with the burglary of a building."  Here the

6    government's position, this is aside, is that the defendant was

7    charged.  The defendant was charged with the burglary of

8    Adelbert Cross's habitation.  On the basis of the record before

9    it, that court couldn't make that determination.  It goes on to

10   state "an occupied structure defined in Ohio broadly to include

11   places in which a person is actually or likely to be present,"

12   it cites the Ohio Code, 2909.01.  The committee comment

13   following that statute states the definition of general concept

14   is that the actual or likely presence of -- the definition of

15   general concept is that the actual or likely presence of a

16   person in a structure, regardless of the nature of the

17   structure itself, creates a more serious risk of harm from

18   commission of the burglary.  Thus, burglary in Ohio "presents a

19   serious potential risk of physical injury to another."  Because

20   the burglary statute requires the actual or likely presence of

21   a person in the burglarized statute.

22           Again, the other courts looking at this type of

23   issue, have ruled the same way in the government's favor.  The

24   government's brief cites Spring, 80 F.3d 1450 (10th Cir. 1996),

25   burglary of habitation under Texas statute was a generic

1    burglary under Ohio.  In this case the Indictment specifically

2    charges that Adelbert Cross's home, his habitation, was

3    burgled.

4            In the event that this court doesn't agree that the

5    home of Adelbert Cross is a specific building or structure,

6    then the government directs the court to Lane and to the

7    otherwise clause of the Armed Career Criminal Act.  Because

8    burglary in Ohio represents a serious potential risk of

9    physical injury to another.  Because the burglary statute

10   requires the actual or likely presence of a person in the

11   burglarized structure.

12           THE COURT:  So you're equating habitation with home

13   or dwelling or building?

14           MS. SANNER:  Yes.

15           THE COURT:  Within the meaning of a generic

16   burglary?

17           MS. SANNER:  Within the meaning of the statute with

18   which the defendant was charged.  He was charged in the

19   Indictment with aggravated burglary.  If you read through the

20   section of the statute that is applicable at the time the

21   defendant was charged, as well as the legislative notes to

22   that, it makes clear that what the legislature intended was to

23   charge as an aggravated burglary, those most serious

24   burglaries, when either the offender is armed, when he

25   threatened to hurt someone, or here when the offense involved

1    someone's home.  The offense here involved, as specifically

2    charged in the Indictment, the burglary of Adelbert Cross's

3    habitation, that is to say his home.

4              THE COURT:  Anything else you want to tell me?

5              MS. SANNER:  I have an alternative motion for an

6    upward departure, but that's essentially the government's

7    position on the matter.

8              THE COURT:  Well, we can postpone that argument if

9    it becomes germane.

10             MS. SANNER:  Thank you.

11             THE COURT:  All right, Mr. Patton.  What about the

12   point here, the government's point to the last sentence of the

13   original Indictment, which is charging aggravated burglary.

14   And the occupied structure involved is the permanent or

15   temporary habitation of Adelbert Cross, in which at the time

16   any person was present or likely to be present?

17             MR. PATTON:  Two things on that.  First, even as

18   written in the Indictment, that does not establish that the

19   occupied structure was a building.  Because occupied structure

20   means any house, building, outbuilding, watercraft, aircraft,

21   railroad car, truck, trailer, tent, or other structure, vehicle

22   or shelter.

23             THE COURT:  So your first point is, is the face of

24   that Indictment, even as amended, if you take out aggravated

25   burglary and put in burglary, does not establish a generic

1    burglary within the meaning of _Taylor_?

2           MR. PATTON:  Correct.  Because saying that the

3    occupied structure is occupied as the permanent or temporary

4    habitation, doesn't mean that it has to be a building.  If you

5    are living in your car under this statute, your car is an

6    occupied structure.

7           THE COURT:  All right, I understand that.  What's

8    your second point on this?

9           MR. PATTON:  Secondly.  The government wants to act

10   like Mr. Lewis got convicted of aggravated burglary as charged

11   in the Indictment.  That is not what he pled to and was

12   convicted of.  The government wants to pretend that all that

13   happened was the word aggravated was struck out and that didn't

14   have any substantive meaning whatsoever.  Citing federal law

15   and law from other cases, to somehow say that in Ohio they

16   couldn't change the charge.  What they're basically trying to

17   say is that a prosecutor in the state of Ohio cannot allow

18   somebody to plead to a less serious offense.  Basically, their

19   position is if you're charged with aggravated battery, it

20   doesn't matter if you negotiate a plea or, excuse me,

21   aggravated burglary, doesn't matter if you negotiate a plea to

22   burglary, which changes the elements of the offense.  We are

23   going to pretend that you actually got convicted of aggravated

24   burglary.  And that is not how the law works.  Prosecutors are

25   entitled, even if you have the person charged with an offense,

1    prosecutors are entitled to enter into plea agreements to allow

2    a defendant to plead guilty to a different offense.  That is

3    what happened here.  Mr. Lewis pled guilty to burglary.

4    Therefore, when you are doing your analysis as to whether or

5    not the offense Mr. Lewis pled guilty to involved conduct that

6    presents a serious potential risk of physical injury to

7    another, you have to look to the elements of the offense that

8    he was convicted of.  He was convicted of burglary, not

9    aggravated burglary.  The Ohio Supreme Court has said that for

10   burglary, the state does not have to prove, it is not an

11   element of the offense, that a person be present or that a

12   person likely be present at the time of the offense.

13   Therefore, you cannot assume, since that's not an element of

14   the offense --

15            THE COURT:  Let me cut to the chase here, is this

16   what you're telling me.  That notwithstanding the fact that

17   that language at the time any person was present or likely to

18   be present, appeared in the original aggravated burglary

19   charge, that when they changed the aggravated burglary to

20   burglary, and he pled to burglary, because not all of the

21   elements of the burglary statute require the presence or likely

22   presence of a person, that he was not necessarily pleading

23   guilty to the factual averment in the original charge that

24   someone was present or likely to be present, is that what

25   you're saying?

1    MR. PATTON:  Correct, yes.  Since you don't have a

2    transcript of the plea or any plea agreement that had a

3    factual --

4    THE COURT:  Basically, what you're saying is the

5    criminal statute to which he pled guilty as amended, in

6    essence, trumps whatever verbiage might be in there upon which

7    the government relies for its armed career offender?

8    MR. PATTON:  Correct.  You can't use an Indictment

9    to an aggravated burglary to try and say well, he pled to

10   burglary, not aggravated burglary, but use the elements of the

11   aggravated burglary to decide how serious the offense was.  He

12   did not plead guilty to aggravated burglary.  You have no

13   evidence before you that when Mr. Lewis pled guilty to the

14   burglary count, the state proved or even said it could prove,

15   that there was a person present or likely to be present.  And

16   you have no evidence that Mr. Lewis ever admitted that there

17   was somebody present or likely to be present.  And since you

18   are doing a categorical approach --

19   THE COURT:  Well, didn't he plead guilty to the

20   charge as amended?

21   MR. PATTON:  He pled guilty to burglary.  When you

22   do a guilty plea, you go over the elements of the offense that

23   the person is pleading guilty to.  You don't go over the

24   elements of the offense to some other more serious offenses

25   that the person is not pleading to.  And at a guilty plea all

1    the defendant must admit are the elements of the offense to

2    which he is pleading guilty.  You cannot assume that Mr. Lewis

3    admitted to facts beyond those which were necessary to prove

4    burglary.

5              THE COURT:  All right.

6              MR. PATTON:  The legislative history that the

7    government cites to you, is absolutely meaningless.  Because

8    you have the Ohio Supreme Court's interpretation of the

9    elements of burglary and aggravated burglary.  And that trumps

10   any type of legislative history that there may be.  Once the

11   Ohio Supreme Court says this is what burglary requires, this is

12   what aggravated burglary requires, the legislative history is

13   meaningless.

14             THE COURT:  Is there anything else you want to tell

15   me?

16             MR. PATTON:  Not on that point, your Honor.

17             THE COURT:  Does it make sense at this point --

18   you're done as well on this issue?

19             MS. SANNER:  Yes, your Honor.

20             THE COURT:  Does it make sense at this point to take

21   a break -- I think I've got to rule on this one way or the

22   other before we move on to some of the other issues, it seems

23   to me, unless there is something else that could be cleaned up

24   right now?

25             MR. PATTON:  No, I agree, you need to rule on this

1    and go from there.

2              THE COURT:  All right.  What I'm going to do is take

3    a recess and digest this.

4              (Recess from 11:19 a.m.; until 11:25 a.m.)

5              THE COURT:  I'm not going on with the sentencing

6    right now, either.  We need to look at this and it's somewhat

7    complicated.  So we're going to take a break in the sentencing

8    and we're going to reconvene and finish this up at 2 o'clock.

9    Are you available at 2 o'clock?

10             MR. PATTON:  Yes, sir.

11             MS. SANNER:  Yes, your Honor.

12             THE COURT:  We're in recess until 2:00.

13             (Luncheon recess from 11:25 a.m.; until 2:00 p.m.)

14             THE COURT:  All right, let me just ask another

15   question before we get going.  And actually this is going to be

16   directed to you as well.  Do I take it that, for our purposes,

17   we are concerned only with Ohio's definition of burglary as

18   found in 2911.12(A)(1), which makes it unlawful to trespass by

19   force, stealth, or deception, in an occupied structure with

20   purpose to commit therein any theft offense or any felony?

21             MR. PATTON:  Yes.

22             THE COURT:  Is that right?

23             MS. SANNER:  Sort of.

24             THE COURT:  Well, I don't know.  If you're sort of

25   right, you're sort of wrong.

1          MS. SANNER:  All I mean to say is I think that the
2     issue before the court is the 924(e) issue.  Burglary --
3          THE COURT:  I understand that.  I'm talking about
4     the amended charge, there is no disagreement that's what he
5     pled to?
6          MS. SANNER:  There is no disagreement that he pled
7     to a burglary charge.
8          THE COURT:  But more specifically, there is no
9     disagreement he pled to the charge as I just read it to you, is
10    that right?
11         MS. SANNER:  Yes.  But it includes the language that
12    is set forth in the Indictment.  That language didn't change
13    and that's the government's position on that.
14         MR. PATTON:  I disagree with the prosecutor that the
15    language in the Indictment controls.  I agree with you that
16    it's the subsection of Ohio's burglary statute that you
17    referred to that Mr. Lewis pled to.
18         THE COURT:  All right.  This is an order.
19                              ORDER
20         The defendant objects to paragraph 27 of the
21    presentence report which states that he has sustained three
22    prior convictions for violent felonies for purposes of applying
23    the sentencing enhancement in 18 U.S.C. Section 924(e),
24    commonly referred to as the "Armed Career Criminal Act"
25    ("ACCA").  Section 924(e) defines "violent felony," in relevant

part as:

> Any crime punishable by imprisonment for a term
> exceeding one year... that -
> (i) has an element the use, attempted use, or
> threatened us of physical force against the person
> of another; or
> (ii) is burglary, arson, or extortion, involves use
> of explosives, or other involves conduct that
> presents a serious potential risk of physical injury
> to another...

18 U.S.C. Section 924(e)(2)(B).

The issue then before the court is whether defendant's 1991 conviction for burglary in Ohio constitutes a conviction for a "violent felony" within the meaning of Section 924(e).

Because of the fact that states have defined the crime of "burglary" in varying fashions, questions have arisen as to 924(e)'s application with regard to prior convictions for burglary. In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court held that an offense constitutes "burglary" under Section 924(e) if, irrespective of its exact definition or label, it has the basic elements of a "generic" burglary - i.e., an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to crime a crime. Moreover, the court held that, in determining whether a prior

1    conviction involved the elements of "generic" burglary, a

2    sentencing court is limited to examining only the fact of

3    conviction and the statutory definition of the prior offense.

4    The court recognized a limited exception in "narrow range of

5    cases where a jury was actually required to find all the

6    elements of generic burglary." 495 U.S. at 602. "For

7    example," the court wrote, "in a State whose burglary statutes

8    include entry of an automobile, as well as a building, if the

9    indictment or information and jury instructions show that the

10   defendant was charged only with a burglary of a building, and

11   that the jury necessarily had to find an entry of a building to

12   convict, then the government should be allowed to use the

13   conviction for enhancement." Id. Thus,

14            an offense constitutes "burglary" for purposes of a

15            Section 924(e) sentence enhancement if either its

16            statutory definition substantially corresponds to

17            "generic" burglary, or the charging paper and jury

18            instructions actually required the jury to find all

19            the elements of generic burglary in order to convict

20            the defendant. Taylor, 495 U.S. at 602.

21        In Shepard v. United States, 544 U.S. 13 (2005), the

22   Supreme Court addressed Section 924(e)'s application in the

23   context of a prior burglary conviction obtained through a

24   guilty plea. The court acknowledged that guilty pleas may

25   establish the requisite predicate violent felony offenses for

1    purposes under the ACCA and that <u>Taylor</u>'s reasoning applies in

2    such situations.  The court further ruled that, for purposes of

3    determining whether a defendant - in the course of pleading

4    guilty under a non-generic burglary statute - necessarily

5    admitted to elements of a generic burglary, the sentencing

6    court is limited to an examination of the terms of the charging

7    document, the terms of a plea agreement or transcript of the

8    colloquy between the judge and the defendant in which the

9    factual basis for the plea was confirmed by the defendant, or

10   to some comparable judicial record of such information.  The

11   sentencing court, however, may not look to police reports or

12   complaint applications to determine whether an earlier guilty

13   plea necessarily admitted, and supported a conviction for,

14   generic burglary.  See <u>Shepard</u>, 544 U.S. at 16, 26.

15          In the case of <u>United States v. Lane</u>, 909 F.2d 895

16   (6th Cir. 1990), the Sixth Circuit Court of Appeals addressed

17   the issue of whether a defendant's prior conviction under Ohio

18   law for attempted burglary constituted a "violent felony" for

19   purposes of the ACCA's sentencing enhancement.  The Sixth

20   Circuit observed that Ohio's burglary statute, set forth at

21   Ohio Revised Code, Section 2911.12, is broader than the Supreme

22   Court's "generic" definition of burglary.  Since it could be

23   applied to the unprivileged entry into "occupied structures"

24   other than buildings, including, among other things,

25   watercraft, aircraft, railroad cars, trucks, trailers, tents,

1    or other vehicles or shelters.  The Lane court found that,

2    given Ohio's non-generic definition of "burglary," it was

3    necessary to examine the defendant's indictment to determine

4    whether Lane had been charged only with the burglary of a

5    building and thus, whether his conviction for attempted

6    burglary fell within the Supreme Court's generic definition - a

7    determination which could not be made based on the

8    then-existing appellate record.

9         The Lane court then went on to consider whether the

10   ACCA's sentencing enhancement was nevertheless appropriate

11   under Section 924(e)'s alternative language which applies to

12   any crime that "otherwise involves conduct that presents a

13   serious potential risk of physical injury to another."  18

14   U.S.C. Section 924(e)(2)(B)(ii).  The Sixth Circuit held that

15   Lane's prior conviction for attempted burglary did constitute a

16   "violent felony" under this language because, in the court's

17   view, burglary in Ohio "requires the actual or likely presence

18   of a person in the burglarized structure," which thus "presents

19   a serious potential risk of physical injury to another."  909

20   F.2d at 903.

21        The present case, like the Lane case, requires me to

22   consider the effect of a prior conviction under Ohio's burglary

23   statute.  Like the Lane court, I conclude that Ohio's Revised

24   Code defines "burglary" more broadly than the generic

25   definition adopted by the Supreme Court in Taylor.  Thus, under

1    <u>Taylor</u>, it is appropriate for me to look to the charging

2    document and official court papers setting forth the plea terms

3    to determine whether, as a factual matter, Mr. Lewis pleaded

4    guilty to the elements of a generic burglary.  In that regard,

5    the government has supplied the indictment, which originally

6    charged Mr. Lewis with the offense of aggravated burglary under

7    Ohio's Revised Code Section 2911.11, and the official journal

8    entry documenting Mr. Lewis's guilty plea to the amended charge

9    of burglary under Ohio R.C. Section 2911.12.  As far as I can

10   tell from these documents, the only amendment made to the

11   language of the indictment is the substitution of the word

12   "burglary" in place of "aggravated burglary."  Consequently,

13   the most that I can discern from the official court papers is

14   that, as a factual matter, Mr. Lewis pleaded guilty to having

15   unlawfully trespassed, by force, stealth or deception, in an

16   "occupied structure" - that being the permanent or temporary

17   "habitation" of one Adelbert Cross - with the intent to commit

18   a theft or felony therein, at a time when another person was

19   present or likely to be present.

20          Based on these facts, I cannot conclude that Mr.

21   Lewis pleaded guilty to the elements of a generic burglary as

22   defined in <u>Taylor v. United States</u>.  The government points out

23   that the "occupied structure" as at issue here was the

24   "habitation" - or "home" - of Mr. Cross and, on that basis, it

25   urges me to find that the criteria for a generic burglary are

1   necessarily satisfied.  But the fact that Mr. Lewis may have
2   burglarized an "occupied structure" that was another person's
3   "home" or "habitation" does not necessarily resolve the issue
4   of whether he burglarized a "building or other structure"
5   within the meaning of Taylor, because Ohio defines "occupied
6   structures" to include - among other things - aircraft,
7   watercraft, tents, and railroad cars - all of which fall
8   outside the purview of a generic burglary as defined by Taylor.
9   It is conceivable - though perhaps unlikely - that Mr. Cross's
10  home or habitation could have been in a tent, a boat, a
11  railroad car, or some other "occupied structure" that, under
12  Taylor, falls outside the boundaries of generic burglary.
13  Suffice to say that an examination of the official court
14  documents in this case does not definitively resolve that
15  issue.

16          Alternatively, the government cites Lane for the
17  proposition that Mr. Lewis's prior burglary conviction counts
18  as a "violent felony" because it is a crime that "otherwise
19  involves conduct that presents a serious potential risk of
20  physical injury to another."  See Section 924(e)(2)(B)(ii).
21  See also Taylor, 495 U.S. at 600 n.9.  ("The government remains
22  free to argue that any offense - including offenses similar to
23  generic burglary - should count towards enhancement as one that
24  'otherwise involves conduct that presents a serious potential
25  risk of injury to another' under Section 924(e)(2)(B)(ii)").

1    In _Lane_ the Court of Appeals noted that burglary in

2  Ohio requires unlawful trespass in an "occupied structure" with

3  intent to commit a theft therein.  Ohio defines "occupied

4  structure" to mean:

5          any house, building, outbuilding, watercraft,

6          aircraft, railroad car, truck, trailer, tent, or

7          other structure, vehicle, or shelter, or any portion

8          thereof, to which any of the following applies:

9          (1) It is maintained as a permanent or temporary

10  dwelling, even though it is temporarily unoccupied and whether

11  or not any person is actually present.

12          (2) At the time, it is occupied as the permanent or

13  temporary habitation of any person, whether or not any person

14  is actually present.

15          (3) At the time, it is specially adapted for the

16  overnight accommodation of any person, whether or not any

17  person is actually present.

18          (4) At the time, any person is present or likely to

19  be present in it.

20  Ohio R.C. Section 2909.01(C)(West 1993).

21          The _Lane_ court interpreted this statutory definition

22  of the term "occupied structure" as being "defined broadly to

23  include places in which a person is actually or likely to be

24  present."  909 F.2d at 903 (citing Ohio Rev. Code Ann. Section

25  2909.01).  Quoting a comment by the Legislative Service

1    Commission, the court further observed that "[t]he definition's
2    general concept is that the actual or likely presence of a
3    person in a structure, regardless of the nature of the
4    structure itself, creates a more serious risk of harm from
5    commission of arson, burglary, and related offenses, and thus
6    warrants more severe treatment of offenders." Id. (citing Ohio
7    Rev. Code Ann. Section 2909.01, Legislative Service Commission
8    Comment).  The Lane court therefore concluded that "burglary in
9    Ohio 'presents a serious potential risk of physical injury to
10   another' because the burglary statute requires the actual or
11   likely presence of a person in the burglarized structure."
12   Id. (emphasis added).

13          Mr. Lewis takes issue with Lane's conclusion that
14   the actual or likely presence of a person in the burglarized
15   structure is a required element for burglary in Ohio.
16   Defendant contends that the aforecited conclusion is both
17   legally wrong and in direct conflict with the Ohio Supreme
18   Court's decision in State v. Wilson, 388 N.E. 2d. 745 (Ohio
19   1979).

20          In Wilson, the Ohio Supreme Court was asked to
21   interpret the meaning of the term "occupied structure" in
22   connection with a defendant's constitutional challenge to his
23   conviction under Ohio's aggravated burglary statute.  The
24   defendant in Wilson contended that the elements for conviction
25   under Ohio's aggravated burglary statute were the same as for

1    simple burglary and, therefore, he should have been sentenced

2    under the less serious burglary statute.

3            The version of Ohio's Revised Code that was in

4    effect at the time of Wilson's conviction is identical in all

5    material respects to the version applicable here.  It defined

6    the crime of aggravated burglary, in relevant part, as follows:

7            "No person, by force, stealth, or deception, shall

8            trespass in an occupied structure..., or in a

9            separately secured or separately occupied portion

10           thereof, with purpose to commit therein any theft

11           offense... or any felony, when... [t]he occupied

12           structure involved is the permanent or temporary

13           habitation of any person, in which at the time any

14           person is present or likely to be present."

15   Ohio R.C. Section 2911.11(A)(3)(West 1993).

16           Ohio defined the crime of burglary, in relevant

17   part, as follows:

18           "No person, by force, stealth, or deception,

19           shall... trespass in an occupied structure or in a

20           separately secured or separately occupied portion

21           thereof, with purpose to commit therein any theft

22           offense or any felony."

23   See Ohio R.C. Section 2911.12(A)(1)(West 1993).  The term

24   "occupied structure," as noted above, was defined as "any

25   house, building, outbuilding, watercraft, aircraft, railroad

1   car, truck, trailer, tent, or other structure, vehicle, or

2   shelter, or any portion thereof, to which any of the following

3   applies:

4         (A) Which is maintained as a permanent or temporary

5   dwelling, even though it is temporarily unoccupied, and whether

6   or not any person is actually present;

7         (B) Which at the time is occupied as the permanent

8   or temporary habitation of any person, whether or not person is

9   actually present;

10        (C) Which at the time is specially adapted for the

11   overnight accommodation of any person, whether or not any such

12   person is actually present;

13        (D) In which at the time any person is present or

14   likely to be present in it.

15   See 388 N.E.2d at 748-49 (citing Ohio R.C. Section 2909.01).

16        The Wilson court noted that the defendant's

17   constitutional challenge turned on the question of whether, the

18   foregoing definitions of an "occupied structure" - particularly

19   the definitions under subsections (B) and (D) - are read

20   cumulatively or, rather, disjunctively.  Specifically if, in

21   proving the second element of burglary - that the thing

22   trespassed upon was an "occupied structure" - the state had to

23   prove both that the place was someone's habitation and that

24   another person was either present or likely to be present at

25   the time of the trespass, then the elements required under

1  simple burglary would be identical to those required for an
2  aggravated burglary.  The two offenses would, in effect, be
3  identical and the defendant's conviction under the aggravated
4  burglary would have violated equal protection principles.

5        However, the <u>Wilson</u> court ruled that there was no
6  equal protection violation raised by the statutes because the
7  four definitions of "occupied structure" were to be read
8  disjunctively.  The court explained:

9        ... In proving burglary the state need only prove
10        that the structure was a permanent or temporary
11        habitation, or a structure in which any person is
12        present or is likely to be present.  It need not
13        prove both.  In aggravated burglary, under R.C.
14        2911.11(A)(3), the state must shoulder the
15        additional burden of proving both.  That is to say,
16        in an aggravated burglary case, the structure must
17        be one that was both the permanent or temporary
18        habitation of any person AND in which at the time
19        any person was present or likely to be present.  If
20        the state can prove only that the building was
21        occupied as a permanent or temporary habitation OR
22        that someone was present or likely to be present, a
23        conviction for burglary, but not aggravated
24        burglary, will stand.
25        R.C. 2911.11, aggravated burglary, carries a higher

43

1              penalty because it is designed to protect homes

2              where the danger of harm is greatest.  The

3              aggravated burglary statute, by its own terms,

4              requires two elements of proof, permanent or

5              temporary habitation and presence or likelihood of

6              presence.  This additional element of proof placed

7              upon the state as part of its burden of proof

8              clearly distinguishes the crime from simple

9              burglary.

10   That's 388 N.E.2d at 750.

11              The Wilson court further explained that, proof of

12   one definition of an "occupied structure" does not necessarily

13   equate to proof of a different definition, nor does proof of

14   only one definition suffice to sustain a conviction under

15   aggravated burglary:  "A structure can be one that was occupied

16   as a permanent or temporary habitation without being one under

17   R.C. 2909.01(D), where at the time anyone is present or likely

18   to be present.  The converse is also true."  Id.  The court

19   also rejected the notion that, proof of a habitation being

20   burglarized creates a presumption that a person is likely to be

21   present for purposes of establishing an aggravated burglary.

22   Such a presumption, the court found, would violate due process

23   principles by unconstitutionally presuming the existence of an

24   element of the offense.  Id.

25              I'm going to take a two-minute recess and come back

44

1    and continue on with this.

2              (Recess from 2:30 p.m.; until 2:35 p.m.)

3              THE COURT:  In the case at bar, Mr. Lewis argues

4    that the Ohio Supreme Court's ruling in <u>Wilson</u> cannot be

5    reconciled with the <u>Lane</u> court's statement that the Ohio

6    burglary statute "requires the actual or likely presence of a

7    person in the burglarized structure."  See <u>Lane</u>, 909 F.2d at

8    903.  As a technical matter, Mr. Lewis is correct.  Under

9    <u>Wilson</u>, the actual or likely presence of a person is not a

10   required element of proof for the crime of burglary.

11   Nevertheless, this technical inaccuracy is not dispositive of

12   the ultimate question before me - that is, whether the crime of

13   burglary, as defined by Ohio's criminal code, involves conduct

14   that presents a serious potential risk of physical injury to

15   another.

16              I begin by reiterating that, in determining whether

17   an offense fits under this residual "otherwise clause," of

18   Section 924(e)(2)(B)(ii), I must employ the "categorical

19   approach" taken by the Supreme Court in <u>Taylor</u>, supra, looking

20   only to the fact of conviction and the statutory definition of

21   the prior offense, not the particular facts at shown by the

22   record of conviction.  See <u>Shepard</u>, 544 U.S. at 17; <u>Taylor</u>, 495

23   U.S. at 602.

24              For present purposes we are concerned only with

25   Ohio's definition of burglary as found in Ohio R.C. Section

1  2911.12(A)(1), which makes it unlawful to trespass, by force,

2  stealth, or deception "in an occupied structure... with purpose

3  to commit therein any theft offense or any felony."  As an

4  aside, I note that Ohio's burglary statute includes two

5  felonious circumstances under which the crime can occur:

6          [Trespass] by force, stealth, or deception:

7          (2) ...in a permanent or temporary habitation of any

8  person when any person is present or likely to be present, with

9  the purpose to commit in the habitation any misdemeanor that is

10  not a theft offense.

11          (3) ...in a permanent or temporary habitation of any

12  person when any person is present or likely to be present.

13  Ohio R.C. Section 2911.12(A)(2) and (3) (West 1993).

14          I also note parenthetically that both of these

15  definitions of burglary do expressly require the actual or

16  likely presence of an individual within the habitation

17  burglarized.  Accordingly, these aspects of the burglary

18  statute would appear to involve conduct that raises the

19  potential for physical confrontation within the home and, thus,

20  serious potential risk of physical injury to an individual.

21  As we have seen, Ohio defines "occupied structure" in four

22  different ways.  Fundamentally, though, whether the place

23  burglarized is a car, boat, house, railroad car, tent,

24  aircraft, or other structure, it is not deemed an "occupied

25  structure," and therefore cannot give rise to a burglary

1   conviction:  unless that place is maintained as a dwelling,

2   occupied as a habitation, adapted for overnight accommodation;

3   or unless at the time a person is present or likely to be

4   present.  See Ohio R.C. Section 2909.01(C).  Each of the

5   foregoing circumstances involve at least an underlying serious

6   potential for confrontation between the burglar and another

7   individual because dwellings, habitations, and places adapted

8   for overnight accommodation are the very types of places where

9   one would expect that other persons would potentially be

10  present.  (Under the fourth definition of "occupied structure,"

11  the state must actually prove that an individual was present or

12  likely to be present.)  It is true that stealing from a

13  railroad car or automobile or boat, might not raise any real

14  potential for physical injury in many cases.  However, it is

15  important to note that such conduct cannot give rise to a

16  burglary conviction under Ohio law in the first place, unless

17  it is proved that the railroad car, or automobile, or boat, is

18  being maintained as a dwelling or used as a habitation or is

19  specially adapted for overnight accommodation, or someone is

20  actually present or likely to be present.  When the Ohio

21  statute is fairly read, its definition of burglary satisfies

22  the criteria of Section 924(e)'s residual clause.  Thus, I

23  conclude that the crime of burglary under Ohio R.C. Section

24  2911.12(A)(1) is a crime involving conduct that presents a

25  serious potential risk of physical injury to another

1    individual.

2         In arriving at this conclusion, I have given careful

3    consideration to the defendant's arguments, particularly the

4    import of the Ohio Supreme Court's decision in State v. Wilson,

5    supra.  As indicated above, Wilson can be fairly read as

6    establishing that the crime of burglary in Ohio does not

7    necessarily require proof of an individual's presence or likely

8    presence in the burglarized structure.  Because actual or

9    likely presence of an individual is not a required element of

10   proof, it is technically possible that a defendant can be

11   guilty of burglarizing a dwelling, or a habitation, or a place

12   having overnight accommodations, even when there was no one

13   present nor any likelihood under the particular facts that

14   another person would be present.

15        Nevertheless, as the Supreme Court has recently

16   advised, Taylor's categorical approach does not require "that

17   every conceivable factual offense covered by a statute must

18   necessarily present a serious potential risk of injury before

19   the offense can be deemed a violent felony."  James v. United

20   States, 127 S.Ct. 1586, 1597.  "Rather," the court has

21   admonished, "the proper inquiry is whether the conduct

22   encompassed by the elements of the offense, in the ordinary

23   case, presents a serious potential risk of injury to another."

24   Id.

25        In James, the United States Supreme Court considered

1  application of the ACCA's "otherwise" clause and, specifically,
2  whether the crime of attempted burglary under Florida law
3  "otherwise involved conducted that presents a serious potential
4  risk of physical injury to another" within the meaning of
5  Section 924(e)(2)(B)(ii).  The court ruled that the crime did
6  satisfy Section 924(e)(2)(B)(ii)'s residual clause and, in so
7  doing, it rejected an argument by the defendant that the crime
8  of attempted burglary cannot be treated as a predicate "violent
9  felony" unless all applications of the statute present a risk
10 of physical injury.
11 As the court explained in James:
12         One could, of course, imagine a situation in which
13         attempted burglary might not pose a realistic risk
14         of confrontation of injury to anyone - for example,
15         a break-in of an unoccupied structure located far
16         off the beaten path and away from any potential
17         intervener.  But ACCA does not require metaphysical
18         certainty.  Rather, Section 924(E)(2)(B)(ii)'s
19         residual provision speaks in terms of a "potential
20         risk."  These are inherently probabilistic concepts.
21         Indeed, the combination of the two terms suggests
22         that Congress intended to encompass possibilities
23         even more contingent or remote than a simple "risk,"
24         much less a certainty.
25 127 S.Ct. at 1597.

1    Applying <u>James</u>'s directive to the case at bar, I

2  conclude that the conduct proscribed by Ohio's burglary

3  statute, in the "ordinary case," <u>James</u>, 127 S.Ct. at 1597,

4  presents a serious potential risk of injury to others.  This is

5  true even though, as per the <u>Wilson</u> decision, there may well be

6  cases in which the burglary did <u>not</u> involve the presence or

7  likely presence of another person in the burglarized structure.

8  As I have noted, because of the way that "occupied structure" -

9  an essential element of the crime - is defined under the Ohio

10 statute, a burglary can only occur if the target location is

11 maintained as a dwelling, occupied as a habitation, adapted for

12 overnight accommodation, or if a person was actually or likely

13 to be present.  These scenarios present circumstances under

14 which, at the very least, there is a <u>serious potential</u> for

15 physical injury because they are, by their very nature,

16 locations where others will potentially be present.  This basic

17 reality was recognized by the Legislative Service Commission

18 when it noted that, "The definition's general concept is that

19 the actual or likely presence of a person in a structure,

20 regardless of the nature of the structure itself, creates a

21 more serious risk of harm from commission of arson, burglary,

22 and related offenses, and thus warrants more severe treatment."

23 See Ohio Rev. Code Section 2909.01 (comment).

24    I recognize that, as per the <u>Wilson</u> decision, the

25 Ohio Supreme Court has held that proof of unlawful entry into a

1    habitation does not give rise to any legal presumption that an

2    individual was either present or likely to be present within

3    the burglarized structure.  However, <u>Wilson</u>'s holding must be

4    read in its proper context.  As I read that decision, the Ohio

5    Supreme Court was ruling that proof that the defendant

6    burglarized a habitation does not, as a matter of law,

7    establish that a person was present or likely to be present at

8    the time of the offense - therefore, it does not automatically

9    establish the elements necessary for aggravated burglary.  Nor

10   does proof of a burglarized habitation give rise to a factual

11   presumption that another person was present or likely to be

12   present, as might remove the state's burden of proof on the

13   issue in an aggravated burglary case.  The upshot of <u>Wilson</u> is

14   that, if the state wants to prove aggravated burglary, it must

15   offer proof to establish, beyond a reasonable doubt, the

16   requisite element that another person was present or likely to

17   be present.

18           For my purposes, though, in construing and applying

19   the ACCA, I am not required to make findings beyond a

20   reasonable doubt.  As the Supreme Court in <u>James</u> made clear,

21   the "ACCA does not require metaphysical certainty" and we are

22   dealing with the inherently probabilistic concepts of

23   "potential risk."  In my opinion, the conduct proscribed under

24   Ohio's burglary statute, as applied in the "ordinary case," is

25   precisely the type of conduct that presents a serious potential

1  risk of injury to others because, by definition, it requires

2  that the burglar invade a dwelling, habitation, a place

3  equipped for sleeping, or some other location where other

4  people are either present or likely to be present.  In my

5  opinion, _Wilson_ does not preclude such a finding.  And,

6  consequently, the defendant's objection in this regard is

7  overruled.  Mr. Patton.

8            MR. PATTON:  Your Honor, since you mentioned the

9  _James_ case and that wasn't argued, I would like the record to

10 state that the last footnote of its majority opinion in that

11 case specifically found that the Florida statute at issue was

12 not a burglary statute, that was broader than the generic

13 burglary definition and did not cover vehicles and the like

14 and, therefore, they found their opinion did not cover statutes

15 that were broader than the general generic burglary.

16 Obviously, in our case, in this case the Ohio statute is.  So I

17 understand you made your ruling, but I want to make that point

18 because the government didn't cite _James_ in their papers.

19            THE COURT:  They did not.

20            MR. PATTON:  I don't want it to somehow on appeal

21 the government argue that I waived any arguments under _James_.

22 But I do think _James_ is distinguishable for that point, and

23 that taking the _James_'s rationale -- you only have to have, you

24 don't have to have metaphysical certainty and that you can talk

25 about inherent probabilities, is this is getting it stretched

1    even one part farther, because in the <u>James</u> case they were

2    dealing with a Florida statute that it had to be a home.  And

3    they talked about that.  Then in this case we're not talking

4    about a home, it had to be a structure there.  I understand

5    your ruling on the definition of occupied structure.  But I do

6    think <u>James</u> is distinguishable in that your application of it

7    in this context stretches it beyond the length that it should

8    be applied.

9           THE COURT:  All right.  Obviously, you're going to

10   have an opportunity to make an argument in full.  Beyond that,

11   were there any other things that needed to be cleaned up by way

12   of objections?

13          MR. PATTON:  No, sir.  We already preserved our

14   argument that under Justice Thomas's concurring opinion in

15   <u>Shepard</u>, the government should have to prove priors to a jury

16   beyond a reasonable doubt.

17          THE COURT:  All right.  Mr. Patton, is there

18   anything, before we move on here, that your client would like

19   to say and/or is there anything that you would like to say?

20          MR. PATTON:  Well, your Honor, obviously, the

21   guideline range is below the 15-year mandatory minimum, so

22   there's not much we can say.  But Mr. Lewis would like to make

23   a statement to your Honor.

24          THE COURT:  All right, do you want to have him come

25   up here to the podium.

1        THE DEFENDANT:  Your Honor, I got a note here, I'm

2  really pleading for my freedom and my life.  It says, Dear your

3  Honorable Judge McLaughlin.  My name is Barry Lewis.  I am

4  writing this in regards to my case and praying, and I mean

5  praying, sir, that you show leniency and not give me 15 years

6  or a lot of time.

7        Sir, I did simply find this rifle.  I was going to

8  turn it into the police as soon as I got to my sister's house,

9  I was going to do this, sir.  But the police caught me with it

10  before I could even do that.  I don't even know what I was

11  thinking that night myself, I should have just left it there,

12  and I should have just went to the phone, but I wasn't

13  thinking, sir.  I just wasn't thinking.  I wanted to get it off

14  the streets so it didn't get in the hands of a child or some

15  neighborhood gangster kids or something, sir.  I just, my mind

16  was going haywire that night, sir.  I didn't mean no harm with

17  it.  I didn't commit any crimes with it.  And nor was I going

18  to even try to own it.  My sister, she's here in this courtroom

19  right now, and she will tell you she wouldn't even let me have

20  a beer in the house, let alone a firearm, sir.

21        I'm just begging and pleading with you that you show

22  me leniency, sir.  I'm sorry I got into this.  If I'd known I

23  was going to get into so much trouble here like this, I

24  wouldn't have gotten involved at all with this dumb thing.

25  Sir, please for God's sake, would you please show leniency to

1    me, please, sir.  That's all I have to say.

2              THE COURT:  All right, Mr. Lewis, thank you.

3    Ms. Sanner.

4              MS. SANNER:  Your Honor, the government did fail to

5    cite James.  We relied on --

6              THE COURT:  Let me just say as an aside -- well,

7    neither side, everybody is busy, but no one ever cites all the

8    applicable cases.  I'm not certainly pointing a finger or being

9    critical of anybody.  It would have been useful, though, if

10   that issue had been joined.  I mean, obviously, in my view it

11   was an important case, it wasn't brought to my attention by the

12   government.

13             MS. SANNER:  Right.  I did actually intend to

14   mention it in oral argument today, but I skipped doing that.

15   Lane, obviously, is cited by James with approval.  Lane is a

16   case that the government was relying on.  Bennett in the Third

17   Circuit also cites Lane with approval.  I kind of was relying

18   on that.  In any event, the defendant's criminal history in

19   this case speaks for itself.  He has a lengthy criminal history

20   from the age of 19.  From 1978, he has seven adult convictions,

21   ten additional arrests, in addition to this conviction.  They

22   are for very violent crimes, including aggravated menacing,

23   abduction, burglary, assault with a deadly weapon, felonious

24   assault, kidnapping, I won't go through them all.  Various

25   parole violations in the most recent years.  If the court makes

1    a time line of the offenses, it will see offenses in '78, three

2    in '80, one in '81, one in '82, I could just go through the

3    offenses here, but I won't take the court's time to do that.

4    He has a lengthy, serious, violent criminal history showing a

5    potential for both violence and recidivism.  The government

6    would ask that you consider all of this in imposing sentence.

7         THE COURT:  Mr. Patton.

8         MR. PATTON:  Yes, sir.

9         THE COURT:  When my law clerk comes in, I recognize

10   you're going to have an opportunity to make these arguments to

11   a higher court, but I want to hear again from you momentarily

12   the basis upon which you think the James opinion is

13   distinguishable?

14        MR. PATTON:  Yes, sir.

15        THE COURT:  All right.  Hold your thought for one

16   second.  Do you want to come up to the podium.  And you're

17   obviously intimately familiar with the opinion?

18        MR. PATTON:  I have read it, I don't have a copy

19   with me.

20        THE COURT:  Would you like a copy, would that help

21   you?

22        MR. PATTON:  Just to identify the footnote.  I'm

23   confident it's the last footnote of the majority opinion, I

24   don't know what number it is.  Part of the issue in the Florida

25   case was --