1          THE COURT:  As a matter of fact, I'm going to give

2   you a minute to look at the opinion.  I'm going to come back

3   out and let you make a pitch in fairness since this issue

4   didn't get totally teed up.  We'll take a short recess.

5          (Recess from 3:00 p.m.; until 3:05 p.m.)

6          THE COURT:  All right, tell me about this case?

7          MR. PATTON:  The Supreme Court in footnote seven of

8   James, I'm sorry, I have your copy -- says burglary under

9   Florida law differs from generic burglary -- it extends not

10  just to entries of structures --

11         THE COURT:  Say that last part again, will you?

12         MR. PATTON:  It extends not just to entries of

13  structures, but also of conveyances.  And then cites the

14  Florida statute.  But because James, in accordance with what

15  appears to be the general practice in Florida, was specifically

16  charged with and convicted of attempted burglary of a dwelling,

17  you need not examine this point further.  So they didn't need

18  to address the issue of a burglary statute or a burglary

19  conviction that dealt with the possibility that it was a

20  vehicle or something other than a dwelling in James.

21         THE COURT:  Are you saying because it was only a

22  dwelling in James?

23         MR. PATTON:  Right.  Because the Indictment itself

24  said that it was a dwelling and, therefore, and the way that's

25  defined under Florida law, it was clear that it was a building.

1    And in <u>James</u>, as you'll recall, the question was, was an

2    attempted burglary, could an attempted burglary qualify as a

3    violent offense.

4                THE COURT:  Yes.

5                MR. PATTON:  So it wasn't a question that it was --

6    whether or not was a building that was at issue versus under

7    Florida law a conveyance or under this Ohio statute we're

8    dealing with, a truck, watercraft, aircraft, railroad car,

9    things of that nature.  So the Supreme Court in <u>James</u> didn't

10   have to deal with taking the otherwise clause in the concept of

11   looking at the elements of the offense in deciding under the

12   elements of the offense does the offense involve conduct that

13   otherwise presents a serious risk of physical injury.  And in

14   <u>James</u> they limit it to looking at the elements of the offense.

15   And they say, and this is on page -- I only have the Supreme

16   Court cite, 127 S.Ct. 1586 (2007), it's page 11 of the Westlaw

17   printout.  Says "rather the proper inquiry is whether the

18   conduct encompassed by the elements of the offense in the

19   ordinary case presents a serious potential risk of injury to

20   another."  Because they focus on the elements of the offense,

21   I'd have to disagree with your conclusion that under the <u>Wilson</u>

22   case when you say well technically under <u>Wilson</u> it's correct to

23   say that the government doesn't have to prove that presence or

24   likely presence.  But it's not technically.  It's that sets the

25   elements of the offense.  And so even though you don't have to

1   find to a mathematical certainty that there is a serious

2   potential risk of injury, you do have to look just at the

3   elements of the offense, and say that based on those elements

4   is this a serious potential risk of injury.  I think in our

5   case, because the Ohio statute deals with watercraft, all the

6   other items, that it does distinguish it from James.  And James

7   also dealt with the curtilage issue.  The defendant argued that

8   because the Florida statute allowed for a burglary conviction,

9   if you just entered the curtilage of a home, that it showed

10  well, there wasn't enough of an entry.  What the Supreme Court

11  did is they looked at how did the state law interpret

12  curtilage.  And they said under Florida law they required there

13  to be some type of enclosure for there to be curtilage.  The

14  Supreme Court said that given that narrow definition by the

15  state courts of what the elements of the offense are, what

16  curtilage is, that because they interpreted it that narrowly,

17  there was still a serious potential risk of injury.  But the

18  Ohio Supreme Court has not interpreted the burglary statute

19  narrowly to include cases where people are present or likely to

20  be present.  They have interpreted it to distinguish it from

21  the aggravated burglary statute as just if it is an occupied

22  structure.  They don't have to the state it's not an element of

23  the offense that a person be present or likely to be present,

24  and you cannot presume from the facts that it is an occupied

25  structure that someone is present or likely to be present.

1    THE COURT:  All right, I have your point.  Is there

2  something you wanted to say on the point, Ms. Sanner?

3    MS. SANNER:  Yes, your Honor.  Just calling the

4  court's attention to footnote seven in the James opinion, which

5  does cite Lane with approval.  It's the government's position

6  that this still goes back to Lane and to the fact that

7  aggravated burglary may be different, it requires physical harm

8  or a deadly weapon or that a person is present.  In this case

9  the victim, as a practical matter, wasn't home at the time that

10  the defendant burglarized it in California.  He was not

11  physically present.  What was burgled was his habitation.  And

12  the government realized on both the language of the Indictment

13  and on Lane, which is cited by James, in which the Ohio

14  District Court, the federal court, the Sixth Circuit found that

15  burglary in Ohio presents a serious risk of the potential for

16  violence.  All of the definitions of occupied structure --

17    THE COURT:  Is it the government's view, since you

18  didn't cite it to me, that the James case is inapposite?

19    MS. SANNER:  No -- I think it's helpful.  I guess I

20  genuinely thought the issue was resolved by Lane.  Because that

21  Ohio statute is specifically at issue.  James deals with the

22  Florida burglary statute, I guess I narrowed down the focus to

23  that.  I considered James to be the issue between James and the

24  Third Circuit decision in Bennett to be what would govern this

25  court's decision.

1    THE COURT:  Well, since we're dealing with a

2  situation here where a man is either looking at 15 years or

3  looking at a substantially smaller amount of time, I'm going to

4  take all the time I need to figure this out, so I'm going to

5  take another recess.  And if the prisoner here needs to be

6  taken up to the restroom or anybody else needs to go do that,

7  go do that.  But we're going to take another look at it.

8    (Recess from 3:15 p.m.; until 3:35 p.m.)

9    THE COURT:  In the brief discussion we had here

10  about James, I have not heard anything that has dissuaded me

11  from the correctness of my original conclusion.  That having

12  been said, I'm going to do this.  I'm going to give you until

13  the 15th to file a brief brief that addresses, and when I say

14  brief, you can make it however long you want to make it, that

15  addresses in some depth your position, as articulated briefly

16  here today, that James is genuinely inapposite and shouldn't

17  inform my decision here at all.  Then, I'm going to give you

18  until the 20th to file a response to that.  And then we will

19  reconvene for the conclusion of the sentence on the 28th at

20  1:30.  All right, we're adjourned until then.

21

22    (Whereupon, at 3:30 p.m., the proceedings were

23  concluded.)

24

25                    - - -

61

# C E R T I F I C A T E

    I, Ronald J. Bench, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Ronald J. Bench